## MOBILE DRUG CO. v. UNITED STATES.

District Court, S. D. Alabama, S. D.

March 7, 1930.

M. E. Frohlich, of Mobile, Ala., for plaintiff.

Alec. C. Birch, U. S. Atty., of Mobile, Ala., and Miles J. O'Connor, General Counsel, Bureau of Internal Revenue, of Washington, D. C., for the United States.

ERVIN, District Judge.

When the evidence was heard in this case, the legal representative of the government asked leave to file a brief, and I have held the case up for that purpose. When the brief was filed it was accompanied with a written request as follows: "Comes now the defendant and respectfully requests the court to make the following findings of fact and conclusions of law." Then follows four statements of fact and six conclusions of law. In this case there is not one word of contradiction in the testimony. The whole case depends absolutely on the application of the law to facts as proven. Under these circumstances, I see no occasion for me to make any findings of fact, as there is no conflict at all in them.

This is a suit by the Mobile Drug Company to recover two sums, or rather one sum and a balance of another, it was required to pay as income taxes for the same year's tax. The Mobile Drug Company was a corporation composed of the various members of the Eichold family. The father, Samuel Eichold, took his sons into the corporation, some as officers and some as employees, at an early age, and they were practically raised in the business.

In 1915 the sons had offers from other lines of endeavor, and in order to keep them with the company the father, who owned a majority of the stock and was president of the company, agreed he would pay them more money for their services, and the record shows that the business increased each year, and that for the years 1916, 1917, and 1918 they were paid a larger amount each year.

On January 9, 1918, the board of directors passed a resolution as follows: "The salaries for the year were discussed and it was agreed that if the volume of sales is sufficiently increased through the efforts of S. E., B. D. E., M. A. E., and H. V. E., that the salaries will be as follows this year

—Samuel Eichold, $18,700.00; Bernard Eichold, $8,450.00; Milton Eichold, $8,700.00 and H. V. Eichold, $7,000.00."

The books of the corporation were kept on an accrual basis. On December 31, 1918, there was credited on the books, $2,800 to Samuel Eichold, $1,500 to B. H. Eichold, $1,500 to M. A. Eichold, and $1,500 to H. V. Eichold. On January 31, 1919, when the books had been balanced for the year 1918, and it had been ascertained that the sales for 1918 had increased 56 per cent. over the year 1917, there was then credited to each of the individuals certain sums. The aggregate of these two credits with the sums paid during the year is the salary named in the January 9th resolution.

It was shown that each of the individuals filed income tax returns for the year 1918 in which they reported the salaries paid them as per the resolution of January 9, 1918, and paid their tax on such reports, and on the income tax return for the corporation for the year 1918 these salaries were reported, and a credit was claimed for the same as expenses incurred during the year 1918.

The government disallowed this claim and made demand upon the corporation for payment of $5,331.32. On March 3, 1921, this was paid to the government under protest, and on December 22, 1922, a claim was filed by the corporation for the repayment of this sum.

On November 8, 1924, the government made demand upon the corporation for payment of $6,293.41 because it was claimed there had been a further mistake in the credit allowed the corporation on account of these salaries. This was also paid under protest, on May 8, 1925.

The drug company filed at various times several different claims with the government for the return of these two sums which it had paid under protest, and there were various rulings by the department. One of them allowed a credit of $3,700. There were also petitions and motions for reconsideration by the drug company from the various rulings as to the balance of these two claims until July 22, 1927, when the Internal Revenue Bureau finally disallowed the claim. There was then a motion for rehearing, and on September 13, 1928, the Commissioner wrote a letter to the drug company in which he says, in part: "Reference is made to form 843 filed by you on March 26, 1928, for the amount of $8,575.00 which pertains to your income and profits tax liability for the year 1918. Such form has been considered as a request for the re-opening of your claim for refund previously considered by this office as the contention set forth therein is identical with the data previously submitted for consideration in connection with the claim. You contend that officer's salaries should be allowed as a deduction in amounts aggregating $43,550.00 as such salaries were authorized by a meeting of the Board of Directors held January 9, 1918, * * * After a reconsideration of the entire record in the case it is the opinion of this office that the meeting of the Board of Directors held January 9, 1918, did not authorize the salaries in question in an amount for the year 1918 in excess of $28,300.00, that no liability was incurred prior to January 31, 1919, for such excess, and that the voting of the salary bonuses at the Board of Directors meeting held on January 31, 1919, constitutes the actual authorization thereof and precludes the allowance as a deduction for the year 1918. In view of the foregoing, the decision as expressed in Bureau letter dated July 22, 1927, is reaffirmed, and request for the reopening of the claim is accordingly denied."

■ There are two questions urged by the government in defense of this suit, the first being the statute of limitation. In section 3226 of Revised Statutes as amended (26 USCA § 156), it is said: "No suit or proceeding shall be maintained in any court * * * unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates."

There is no question that as to the first sum, namely, $5,331.32, paid by the drug company on December 22, 1922, this suit was begun more than five years after this payment and more than two years after it had been disallowed by the Commissioner, but it is contended that, notwithstanding the original disallowance by the Commissioner, there had been requests for reconsideration and rehearings by the Commissioner which kept the matter before him at least until July 22, 1927, and the letter of the Commissioner under date of September 13, 1928, is referred to to show this fact. Certainly the Commissioner considered there had been no final ruling against any part of this claim until July 22, 1927, and that the matter was before him until that date. If not up to September 13, 1928, when he wrote this letter. See Michel v. United States (C. C. A.) 37 F.(2d) 38.

While conceding that if the claim was barred by the statute of limitation, subse-

quent claims or motions in the case would not reinstate the validity of the claim, I consider that under the rulings by the department the motions for rehearings kept the matter before it until the claim was finally denied by it. Certainly the Commissioner considered that it was before him because of these various petitions, motions, and requests filed by the drug company, and giving credit to these views of the department, I hold that the matter was not barred by the statute of limitations at least prior to July 22, 1927, and hence that the statute of limitations is not applicable as a defense to any portion of the money claimed in this suit.

■ Then as to the question of the validity or effect of the resolution of January 9, 1918, which states that it was agreed that if the volume of sales was sufficiently increased through the efforts of these named employees that their salaries will be as named in the resolution. The proof shows that sales were increased some 56 per cent. during that year. Surely this increase, brought about as the testimony shows through the efforts of these various employees, justified the increases named, and if, as the resolution states, it was agreed between the employees and the company, the employees had the right to sue for their salary upon showing that the sales had been increased through their efforts sufficiently to justify the increase in salaries, and in my opinion this had been shown.

In the letter of the Commissioner under date of September 13th, it is claimed "that no liability was incurred *prior* to January 31, 1919." This statement shows that the Commissioner realized that there was a liability, and that is further shown by the fact that $3,700 of the amount paid under protest had been credited to the drug company. But the Commissioner claims that this liability did not accrue until January 31, 1919, when the final apportionment was made to the credit of the various employees. The fact that the books had to be closed to ascertain the increase of sales of 1918 over those of 1917, and the further fact that this could not be ascertained until after January 31st, when all records were in, does not prove that the liability was not one of 1918. Under the circumstances it could not be ascertained until all business of 1918 was closed.

The resolution of January 31st did not give any new authorization of credit for salaries earned; it merely credited to each one the balance of salary fixed by the January 9th resolution. From the tenor of the Commissioner's letter, had the credit of December 31st given to each the full salary voted in the January 9th resolution he would have allowed it.

The resolution passed on January 9, 1918, recited the salaries for "the year"; therefore it was salaries for 1918 that were to depend on the sales for that year, and the further fact that the total amount of these sales were not ascertained until January 31, 1919, did not carry the claim over to the salary year, 1919.

Particularly is this true because the total transactions of the year were ascertained and closed. As a fact it was shown that these salaries were put in the return made for the year 1918 which was made after the close of that year.

The debt accrued when the conditions happened on which the debt depended, not when the evidence became available to prove these conditions.

"It would seem that the correction of mistakes should be mutual, and not one-sided. Appellee's obligation to pay taxes at the 1917 rate was a fixed liability, although it was unknown to him until the refund was made at a later date." Rose v. Dobbs (C. C. A.) 36 F.(2d) 464, 465.

The evidence showed an original return for the year 1918, filed on March 14, 1919, an amendment to it filed on May 13, 1919, and that on June 29, 1923, an additional tax was assessed for the year 1918 which was later increased, so that as a matter of fact there were four efforts to get an assessment for the year 1918 correctly made and on the books. There were various claims filed for refunds by the taxpayer and various rulings by the different departmental officials on these claims, all seeking one purpose, namely, the correct solution of the taxes and the credits to be allowed for the year 1918.

In my opinion the Commissioner was right in recognizing that the liability had been incurred, but he was wrong in holding that the liability was incurred during the year 1919.

It is therefore ordered, adjudged, and decreed that the plaintiff is entitled to recover the sums sued for, namely, $5,331.32 with interest from March 3, 1921, and $3,-244.61, with interest from May 8, 1925.