**AMERICAN SAFETY RAZOR CORPORA-
TION v. UNITED STATES. ***

No. L–510.

Court of Claims.
March 5, 1934.

*For opinion on motion to amend findings, etc., see 7 F. Supp. 196.

John Enrietto, of Washington, D. C. (Charles D. Hamel and Hamel, Park & Saunders, all of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

Plaintiff brings this suit to recover $8,-526.35 with interest, being the amount which is admitted to have been overpaid on its income tax for 1923. Of this amount, the defendant admits liability for $631.23 with interest from July 9, 1927, and denies liability on the remainder on the ground that action thereon is barred by the statute of limitations.

It appears from the evidence that during the period involved in the case the plaintiff had pending in the Bureau of Internal Revenue the question of its liability for taxes for the years 1919 to 1926, inclusive. The principal question in controversy between the plaintiff and the government was a claim for depreciation each year on patents. The other issues were all eventually settled. The claims for depreciation of patents were also allowed and complete settlement made thereon between the Government and the plaintiff except as to the allowance for depreciation of patents for 1923 which is in issue in the case now before the court.

The evidence shows that for several years the matter of these taxes was pending in the Bureau, and the plaintiff having paid the amount demanded by defendant had filed claims for refund for the years 1919, 1920, and 1922, together with briefs based on the claim for the allowance on account of depreciation of patents. The Commissioner having issued notice of deficiencies for the year 1922, the plaintiff filed petitions in the Board of Tax Appeals setting out the same grounds that were stated in the claims for refund. While these claims were pending, the Commissioner wrote a letter to plaintiff determining the issues involved therein and, among other things, allowing a claim for depreciation of patents, and the taxpayer thereafter filed claims for refund for the years 1923, 1924, 1925, and 1926, in each claiming allowance for depreciation of patents.

The claims for refund for the years 1923 to 1926, inclusive, were rejected in May, 1928, by the Commissioner. Shortly thereafter plaintiff presented to the Commission-

er a statement and computation of the depreciation on patents for each year, and stated therein that depreciation for the patents had been allowed at an annual rate of 15 per cent., and in substance that the computation was in accordance with the Commissioner's decision. It would serve no useful purpose to further set out in the opinion details of the evidence. It is sufficient to say that thereafter there was a series of communications which passed between the plaintiff and defendant with reference to the further consideration of plaintiff's claims, and that all of the claims were allowed and settled except for the year 1923. As to the year 1923, we are satisfied from the evidence not only that plaintiff had reason to believe from the communications it received that its claim would be reconsidered, but that it actually was reopened and considered by the Commissioner. In fact the last communication from the Commissioner's office dated December 11, 1930, taken together with other evidence, is in effect an admission that the claim had been reconsidered, as it stated: "It is noted that your application for the reopening of your refund claims for the years 1923, 1924, and 1925 was not filed within two years from the date of rejection of such claims, and you are advised, therefore, that the overassessments allowable are limited to the amounts of tax (and interest) paid within the past 5 years." This was in effect a disallowance of the claim as to the taxes which were not so paid.

Plaintiff soon thereafter began a suit covering the years 1923, 1924, and 1925, but refund was subsequently made for the years 1924 and 1925, and the only issue now before the court is as to refund of the admitted overpayment for the year 1923. The case turns on the question of whether the period of limitation on the suit began with the date of the rejection of the original claim or at the time it was rejected after reconsideration.

 The defense set up is, first, that there was no reconsideration of the original claim for refund, and therefore the suit could not have been begun in time. Our conclusions upon the evidence are that there was a reconsideration, and therefore this defense is not well founded. The other and main defense is that under a Treasury decision in force at the time in question a reconsideration of the claim for refund did not extend the time for bringing suit thereon. This defense will next be considered.

 We have several times held that, where a claim for refund has been reconsidered, the statute of limitations does not begin to run until the final rejection thereof, and this rule has been upheld by other courts. Under this rule the claim was not finally rejected until December 11, 1930, and the suit was begun in time. The decision upon which the defendant relies (T. D. 4235, approved October 23, 1928) states, among other things, that: "No reopening or application for reopening will extend the period within which suit must be brought, nor will a reconsideration of a claim be considered as a reopening."

If this announcement was binding upon all taxpayers, the fact that the plaintiff's claim was reconsidered is immaterial, and its action is barred as to the last payment of $7,895.12 on the 1923 taxes. We must therefore determine whether this decision was valid and enforceable.

The provision in question has been spoken of in argument as if it were a regulation. If we were to consider it as a regulation, we think it is an unreasonable one, especially when applied to the circumstances in the case at bar which show that the plaintiff had reason to believe that its case would be reconsidered and that it might properly refrain from bringing any suit until it was determined. But this provision was not a regulation in the proper sense of the term. It was an announcement in advance of the ruling which the Bureau of Internal Revenue would make when a certain state of facts appeared, and it also was a decision construing the statute. If a court had prior to the announcement of this decision construed the statute as nearly all courts have since, no one would contend that the Treasury had the right to overrule the court and put a different construction upon the statute. We do not think there is anything in the statute which justifies such a decision. On the contrary, it appears to us that the courts would be led into many contradictions by following it. A case cannot be reconsidered if the former decision is final in the sense that it cannot be reopened, and if reopened the former decision is set aside. If upon reconsideration the determination is in favor of the taxpayer instead of against him, then, under defendant's theory, we would have two final decisions, the one that was first made and the one that was made on reconsideration. This would be entirely illogical. We think it clear that, when the statute referred to the

time of the rejection of the claim for refund, it meant the final rejection, and that the effect of reconsideration was to set aside the former decision and bring up the matter as if it had not before been acted upon. It appears to us that the decision on which the defendant relies is merely an attempt to change the law by a Treasury decision, and, if we are correct in this, it is clear that the Treasury did not have and could not be given such authority. It is for the courts and not for the Treasury to say what effect a reconsideration of a claim shall have under the statute, or in other words, how the statute shall be construed as applied to a certain state of facts. We do not have before us a case which warrants the application of the rule that re-enactment of a statute after long-continued and uniform administrative construction thereof will cause the courts to give weight to that construction. The 1928 Revenue Act (26 USCA § 2001 et seq.) was passed before the decision was promulgated and therefore has no bearing. The original petition in this case was filed December 15, 1930. Not only was the instant case pending when the 1932 Revenue Act (26 USCA § 3001 et seq.) was passed, but there had been two court decisions contrary to this Treasury decision prior to the time when the 1932 act was passed, namely, Mobile Drug Co. v. United States (D. C.) 39 F.(2d) 940, and McKesson & Robbins v. Edwards (C. C. A.) 57 F.(2d) 147, 149.

It is immaterial whether the Treasury decision had been promulgated at the time when the reconsideration took place in the two cases last mentioned. The statute which the courts construed was the same, and the Treasury by making a different holding thereon could not change the meaning of the law as fixed by the courts. For this reason, we think that the McKesson & Robbins Case which was decided after the Heebner Case (D. C.) 50 F. (2d) 904, to which reference will hereinafter be made, practically overruled the Heebner Case. In the McKesson Case, the court had to apply the same provisions which we are now considering. Holding as it did that the claim for refund had been reconsidered, it held further that the limitation now in question did not begin until final rejection after reconsideration. The court also said: "The plaintiff had every ground for supposing that its claim, which was in fact under consideration at least until March 27, 1926, had not been finally rejected before, * * * [and] section 3226, Rev. St. [as amended (26 USCA § 156)], like any other document, *is to be read as sensible people would understand it.* * * *" (Italics ours.)

With these decisions before it as to how the statute was to be read and understood, the fact that Congress did not change the provisions of the law in the 1932 act has no tendency to support the contention made on behalf of the defendant, but, if any inference is to be drawn, it is to the contrary.

In Jones v. United States, 77 Ct. Cl. ——, 5 F.Supp. 146, 152, we said: "That a reconsideration of a refund claim on the merits constitutes a reopening of the claim is no longer open to doubt."

This case also affirms the rule that, "* * * when the Commissioner, upon application made by a taxpayer within the time in which suit could be instituted on a disallowed claim, enters into a reconsideration of the merits of the claim and later makes a decision thereon rejecting the claim, or adheres to his former decision rejecting it, his decision for the purpose of the statute of limitations is in abeyance until he has reached and announced his final decision, and the taxpayer, under section 3226 of the Revised Statutes, as amended (26 USCA § 156), has two years thereafter in which to institute suit."

The Jones Case was not begun until March 8, 1932, and was decided December 4, 1933. Upon reason and authority, we are clear that the Treasury decision was merely an erroneous construction of the statute by an administrative department and is not binding upon the plaintiff.

What we have said above is not in accordance with the view taken in Heebner v. United States (D. C.) 50 F.(2d) 904. We do not agree with the doctrine laid down therein, and do not think that a taxpayer is bound to take notice of Treasury decisions on legal questions or that even actual knowledge thereof would make them more binding.

It follows that plaintiff is not only entitled to recover the amount of its claim which is admitted not to be barred but the remainder of the overpayment also, together with interest thereon in accordance with law. Judgment will be entered accordingly.

BOOTH, Chief Justice, and WHALEY, WILLIAMS, and LITTLETON, Judges, concur.