**TODD v. SECURITIES AND EXCHANGE COMMISSION (INTERNATIONAL HYDRO-ELECTRIC SYSTEM, Intervener).**

No. 9348.

Circuit Court of Appeals, Sixth Circuit.

June 22, 1943.

Howell Van Auken, of Detroit, Mich. (Howell Van Auken and Lucking, Van Auken, Schumann & Greiner, all of Detroit, Mich., on the brief), for petitioner.

Louis Loss, of Philadelphia, Pa. (John F. Davis, Milton V. Freeman, Roger S. Foster, Louis Loss, Robert F. Krause, and Joseph B. Levin, all of Philadelphia, Pa., on the brief), for respondent.

John R. Quarles, of Boston, Mass. (John R. Quarles and Ropes, Gray, Best, Coolidge & Rugg, all of Boston, Mass., on the brief), for intervenor.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review an order entered by the Securities and Exchange Commission. At the proceeding initiated by the Commission pursuant to Section 11(b) (2) of the Public-Utility Holding Company Act of 1935, 15 U.S.C. § 79a et seq., 15 U.S.C.A. § 79a et seq. the petitioner, a stockholder and director of the International Hydro-Electric System, a public utility holding company (hereinafter called the System), was permitted to participate in the proceedings, cross-examine, introduce

evidence, file briefs and make oral argument.

The Commission, after extensive hearings, found that the continued existence of the System unduly and unnecessarily complicates the structure, and unfairly and inequitably distributes the voting power among the security holders of the System. It ordered the System "to liquidate and dissolve," and "to proceed with due diligence to submit to this Commission a plan for its liquidation and dissolution in a manner consistent with the provisions" of the Act. Jurisdiction over all subsequent steps in the process of liquidation was specifically preserved.

The pertinent part of the applicable statute, Section 11(a), (b) (2), provides:

"It shall be the duty of the Commission to examine the corporate structure of every registered holding company and subsidiary company thereof, the relationships among the companies in the holding-company system of every such company and the character of the interests thereof and the properties owned or controlled thereby to determine the extent to which the corporate structure of such holding-company system and the companies therein may be simplified, unnecessary complexities therein eliminated, voting power fairly and equitably distributed among the holders of securities thereof, and the properties and business thereof confined to those necessary or appropriate to the operations of an integrated public-utility system.

"(b) It shall be the duty of the Commission, as soon as practicable after January 1, 1938: * * *

"(2) To require by order, after notice and opportunity for hearing, that each registered holding company, and each subsidiary company thereof, shall take such steps as the Commission shall find necessary to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company system. * * *"

The record reveals the following facts, which are not controverted:

The System is the top holding company in a four-tier group of utility companies consisting of 74 active corporations, of which seven are holding companies only, fifty are electric and gas utility companies, and seventeen are companies engaged in the business of water storage, transportation, real estate, and other activities. It was created under the laws of Massachusetts by a declaration of trust, and its companies fall into three groups: (1) The New England Power Association, which is also a holding company with sixty-three direct and indirect subsidiary companies engaged in the electric and gas utility business in all of New England except Maine; (2) the Gatineau Power Company, a Canadian holding company and its subsidiaries, operating an electric utility business in Quebec, Ontario, and New Brunswick; and (3) four direct subsidiaries carrying on business in New York State, Maine and New Hampshire.

The System has outstanding 121 issues of securities consisting of 26 debt issues, 21 preference stock issues, and 74 common stock issues, the debt and preferred stock being in general held by the public, and the common stock, representing the voting power, in general held by the System.

■ The record not only amply sustains the finding of the Commission that the continued existence of the System unduly and unnecessarily complicates the structure of its holding company system, but makes any other conclusion impossible. The System hires only six employees, four of them on a part time basis, with an annual pay roll of approximately $17,000. The New England Power Association, one of the constituent holding companies, in contrast has 9,300 employees with an annual pay roll of about $17,500,000. The System is not competent to aid its subsidiaries, and the subsidiaries are completely independent of the System and of each other in their operations. They neither exchange personnel nor pool the purchasing of supplies, equipment or insurance. The System's president admitted at the hearing that there would be no substantial loss to the two major groups, the New England Power Association and the Gatineau Power Company, if they were completely severed from the System. The three groups are not jointly operated and hence no economies result from joint operation. A minor tax saving of some $11,000 to two companies of the third group, due to their being able to file a consolidated return, is the only tangible benefit disclosed. In fact the expenses and taxes of the System have averaged over $182,000 for each of the past ten years, paid with no corresponding bene-

fit resulting to the security holders. The Commission correctly found that the System serves no economic purpose and no useful function as a holding company with respect to its subsidiaries. It also correctly decided that this condition, which arose out of the existence of the System and not out of its corporate structure, could be remedied only by terminating the existence of the System as a holding company.

The finding was also inevitable that the continued existence of the System unfairly and inequitably distributes voting power among the security holders of the System. The holders of Class A stock, of which the petitioner is one, exercise complete voting control of all 74 companies in the System. But this class represents only 8.5 per cent of the consolidated capitalization. Clearly in violation of the statute, control of the subsidiary public utility companies is exerted by the holders of the Class A stock through disproportionately small investment. Section 1(b) (3).

The System has not challenged the findings nor attacked the order, but has filed with the Commission an outline of a program of liquidation, and has intervened in this review proceeding for the purpose of supporting the order of dissolution.

The petitioner likewise does not challenge the findings of fact, nor does he maintain that the dissolution order would not be in accordance with the statute under this record, if entered at a subsequent time and after the Commission has taken certain steps which he considers a prerequisite to dissolution. He claims that the order violates the statute because (1) it is made at an impracticable time in the midst of abnormal war conditions; (2) it is made in advance of adequate investigation of the property interests of the System; (3) immediate dissolution of the top holding company should not be ordered in advance of consideration by the Commission of action to be required of other companies within the System; (4) the order is vague and uncertain, and (5) the statute and the order are unconstitutional. In addition he asks that the record be returned to the Commission for the taking of further testimony with reference to certain valuable choses in action which he claims the System has against the International Paper Company and must be asserted prior to dissolution.

■ Respondent and the System contend that none of these points can be raised in this court upon the ground that Section 24(a) requires as a condition precedent to the right to review an order of the Commission that the objections made shall have been urged before the Commission or that there were "reasonable grounds for failure so to do." A similar statutory provision in the National Labor Relations Act, 29 U. S.C.A. § 151 et seq. has been commended by the Supreme Court as embodying "the salutary policy * * * of affording the Board opportunity to consider on the merits questions to be urged upon review of its order" (Marshall Field & Co. v. National Labor Relations Board, 63 S.Ct. 585, 586, 87 L.Ed. ——, decided March 1, 1943), and the court there held presentation of such questions to the Board a prerequisite to judicial review. Under Section 24 (a) and the rule of the cited case, consideration is forbidden of certain points raised here for the first time, such as that dissolution of the System cannot presently be made in advance of decision by the Commission as to action required of the subsidiary companies, or that the order is vague and uncertain.

Marshall Field & Co. v. National Labor Relations Board did not involve constitutional questions. As to such contentions not raised before the Commission, the Ninth Circuit, without discussion [Pacific Gas & Electric Co. v. Securities and Exchange Commission, 127 F.2d 378, 386], has held that they cannot be considered by the court. Since the Commission is not empowered to rule upon the constitutionality of statutes, the fact that the constitutional objections were not raised before it, as a matter of abstract justice perhaps should not preclude the assertion of such questions in this court. But the wording of Section 24(a) is inclusive enough to embrace every kind of question, whether of law or fact. The Commission was established by congressional enactment, and the right to review its order likewise is given by the Congress. The conditions under which the right may be exercised are within the power of the Congress to define, and one condition is that any question relied on in this court must have been urged before the Commission. We conclude that the constitutional questions are not before us.

■ However, the petitioner is not precluded from urging other main objections. At the hearing he contended that the dissolution of the System at the present time is impracticable because of adverse war

conditions. The objection was made before the Commission in an intelligible manner. In fact it was considered by the Commission and overruled. This is sufficient.

The Commission specifically found that the System's present precarious financial condition is not due to war conditions. It stated that "Even an immediate alleviation of such conditions would not materially improve the company's position." These findings are supported by substantial evidence and are binding on this court. Cf. Ecker v. Western Pacific R. R. Corp., 63 S.Ct. 692, 87 L.Ed. ——, March 15, 1943.

Also the Commission clearly acted in accordance with the statute in not deferring the entry of the order. The contrary contention is based upon the fact that the statute requires the Commission "as soon as practicable after January 1, 1938," to require registered holding companies and their subsidiaries to effect geographical integration, to simplify their structure and to take such steps that the voting power shall not be unfairly distributed. Petitioner urges that the issuance of the order at the present time is "impracticable," due to war conditions and their effect upon the business of the System. But the statute, while providing due protection for investors, has not made convenience for the holding company the test of statutory practicability. The term "as soon as practicable" clearly means that the action contemplated by the statute shall be taken "as soon as practicable" for the Commission.

This conclusion does not mean that the Commission itself has an unlimited discretion with reference to the time of the action required. While § 11(b) (2) vests the Commission with wide discretion as to steps to be taken to insure the attainment of the statutory ends, the duty imposed upon the Commission to act to secure those ends after a hearing which discloses the four-tier pyramided structure and the gross inequality of voting power revealed in this record is mandatory. Cf. North American Co. v. Securities and Exchange Commission, 2 Cir., 133 F.2d 148, 152. This is shown by the plain wording of the applicable sections and also by the legislative history. The enactment contemplated the dissolution of holding companies other than those excepted in the Act by the end of five years. Analysis of Senate Bill 1725, Hearings, page 51, 74th Congress, First Session, Senate Report 521 accompanying Senate Bill 2796, at page 11. The statute specifically makes it the policy of the Act to provide for the elimination of the holding companies not excepted. Section 1(c). Investors are amply protected by the one-year period of adjustment provided in Section 11(c), and the provision in the same section for a year's additional extension. In case the Commission applies to a court to enforce compliance with the order the period for further action is fixed by the court. The Commission, having instituted and held the hearing, the fairness of which is in no way attacked, was compelled not to indefinitely delay issuing the order.

With reference to the application for leave to adduce additional evidence, it is stated, and not denied, that the petitioner did not know of the existence of the facts concerning which he now desires to introduce additional testimony and petitioner hence urges that there are reasonable grounds for his failure to adduce this evidence before the Commission, § 24 (a). The circumstance that the trail which led to them was discernible in "the reports of the Federal Trade Commission made pursuant to S. Res. 83 (Seventieth Congress, first session)," referred to in Section 1(b) of the statute, does not constitute notice to the petitioner of the existence of these facts. While such reports are public records, the statements of fact set forth in them are not binding upon this petitioner. Litigants are not bound to take notice of executive decisions on legal questions (Van Antwerp v. United States, 9 Cir., 92 F. 2d 871; American Safety Razor Corp. v. United States, 6 F.Supp. 293, 79 Ct.Cl. 141), and a fortiori, they are not bound to take notice of the statements of fact embodied in public records compiled by administrative agencies. It is not contended that the existence of the facts as to transactions between the System and the International Paper Company set forth in the report were endowed by statute with the character of notice, nor is there any just or logical reason to hold that litigants are presumed to be acquainted with the various details contained in the voluminous reports of the numerous administrative bureaus. We think that the petitioner has shown that there were reasonable grounds for his failure to urge before the Commission the existence of the

480

causes of action upon which he relies and that this contention should be considered here.

Upon this point the petitioner declares that the System has a right to rescind certain purchases of securities and properties from the International Paper Company and its predecessors, which promoted and originally controlled the System. He alleges that these rights, if realized, would give the System an estimated balance of recovery of $64,000,000; that is, sufficient cash to cover in full its debentures and preferred stock, and to leave a substantial surplus for its Class A stock, which is the junior security some shares of which are held by the petitioner. He also urges that in order to effect these rescissions the System must be in a position to return to the International Paper Company the various securities and properties transferred in the transactions, claimed to be voidable because of fraudulently concealed profits, accruing to the International Paper Company at a time when it occupied a fiduciary relationship toward the System. In addition to praying for an order to take additional testimony with respect to these alleged rights of rescission, petitioner prays for a stay of the review proceedings pending the taking of the testimony and prosecution of the actions for rescission.

In order to succeed in his application for leave to introduce additional evidence the petitioner must show that the evidence in question is material, Section 24(a), but this he has failed to do.

The alleged right of rescission has no bearing upon the issues before the Commission, which were whether the corporate structure of this holding company should be simplified and whether the voting rights are unequally distributed among the security holders. Under Section 11 the protection of assets of the holding company and its subsidiaries, while duly provided for, is incidental to the main and mandatory purpose, which so far as applicable here is to require the simplification or elimination of pyramided holding companies and the equalization of voting power in public utility systems.

The petitioner points out that the Commission's findings did not discuss nor include these alleged choses in action and contends that this is a violation of the statute, which requires the Commission to investigate the holding company's "properties." Assuming that this question, although not specifically raised below, is so inextricably bound up with petitioner's main contention that additional testimony should be taken upon the subject of the existence and value of the choses in action as to be properly presented before us, we think that the statute does not require the Commission at this stage to inquire into all the credits and choses in action owned by the System. The use of the plural term "properties" Section 11(a), indicates that the requirement for the initial examination is for an investigation of real estate, equipment, and physical plant. The term is used in the statute in a different sense from "assets," and in the same paragraph it is differentiated from "business." We think the Commission made an adequate investigation of the properties of the System prior to issuing the order.

In any case, the question whether or not the claims for rescission are valid has no relevance upon the issues of complicated structure and unequal voting power and hence the application to present additional evidence must be denied. The order of dissolution is not founded upon the value of the assets of the System. Conceding that rights of rescission to the amount of $64,000,000 do reside in the holding company, it still is a pyramided structure of the kind forbidden by the Act, with voting power in the hands of a very small group, whose dissolution the Commission is authorized to require. Also petitioner is not prejudiced by the order. The Commission left open the method of liquidation, and is obligated to take such action that the assets of the System shall be preserved and marshaled for the benefit of the investors. No distribution has been ordered. If eventually the Commission should hold that the alleged right of rescission does not exist, the petitioner still, under Section 24 (a), has a right of court review.

The petition is dismissed.