137 F.2d 355 (1943)
LAKEMORE CO.
v.
BROWN, Price Adm'r.
No. 15.
United States Emergency Court of Appeals.
Heard April 2, 1943.
Decided July 15, 1943.
*356 Lloyd S. Schwenger, of Cleveland, Ohio, for complainant.
Nathaniel L. Nathanson, Asst. Gen. Counsel, of Washington, D. C. (David Ginsburg, Gen. Counsel, Thomas I. Emerson, Associate Gen. Counsel, and William R. Ming, Jr., and Carl H. Fulda, Attys., of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.
Before VINSON, Chief Judge, and MARIS and MAGRUDER, Judges.
MAGRUDER, Judge.
This complaint raises the question whether the Emergency Price Control Act, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq., requires the Price Administrator, in promulgating rent regulations thereunder, to make provision for adjustment of the maximum rent applicable to an individual property, on the ground that the local authorities had reappraised the particular property and increased its assessed valuation, with the result of increasing the owner's real estate taxes.
The applicable regulation is Maximum Rent Regulation No. 16 for Housing Accommodations in the Cleveland Defense-Rental Area, which was issued on May 27, 1942, to become effective June 1, 1942. 7 F.R. 4090. In its general scheme this regulation followed closely the form of the rent regulation considered by us in Chatlos v. Brown, decided May 28, 1943. For housing accommodations, which were rented on July 1, 1941, § 4 of the regulation prescribes that the maximum rent "shall be the rent for such accommodations on that date." Section 5 states seven grounds on which alone a landlord may file a petition for adjustment to increase the maximum rent otherwise allowable. The applicable grounds, in general, cover situations in which the rent on the maximum *357 rent date was not fixed by normal economic forces in a free competitive market, or where there has been a major capital improvement or a substantial increase in the services furnished by the landlord. No provision is made for adjustment on account of increased taxes or other operating costs since the maximum rent date.
On June 30, 1942, The Lakemore Company filed with the Administrator a petition for adjustment of maximum rents on the ground of an increase in real estate taxes since the maximum rent date. This petition was denied by the Administrator on July 8, 1942, on the ground that it did not state a case for relief under any of the seven categories enumerated in § 5.
Thereafter, on July 25, 1942, The Lakemore Company, pursuant to § 203(a) of the Act, filed with the Administrator its protest, directed both against Maximum Rent Regulation No. 16 and against the order of the Administrator denying its petition for adjustment. We need to consider the protest only as it is directed against the regulation itself, because it is clear that complainant was not entitled to relief under any of the adjustment provisions in § 5; and if the regulation is valid, the requirements of an equable and non-discriminatory administration of it necessitated a denial of the petition for adjustment.
The protest recited the following facts: The Lakemore Company since May, 1939, has been the owner of an apartment building in Cleveland, Ohio, consisting of forty-two suites, all of which are rented on a month-to-month basis. The rentals which it was receiving on July 1, 1941, "were less than those rentals which were being received for comparable suites in the same neighborhood on said date." On December 19, 1941, the auditor of the County of Cuyahoga gave notice to protestant that the value of the apartment building had been reappraised for the tax year 1941, resulting in an increase of the assessed valuation from $84,250 to $109,250. "This arbitrary increase of assessed valuation" increased the taxes on the property (on the basis of the 1941 tax rate) from $2,687.56 to $3,474.15, an increase of $786.59 per year, which "will remain in effect indefinitely." The increase for the tax year 1941 is first payable during the year 1942. "Had notice of this increase been received by the Protestant prior to July 1st, 1941, rents would have been increased at the time of such receipt, and the schedule of rents as of July 1st, 1941, would have reflected such tax increase. As a matter of fact, rents were slightly increased after July 1st, 1941, but this Protestant has been unable to retain the benefit of this increase by reason of the Rent Control Act. As a result this Protestant has been subjected to an unnecessary hardship."
Specifically, protestant objected to § 5 of the regulation, (1) for failing to make provision for adjustment of rents in those cases where an increase of the assessed valuation has resulted in an increase of real estate taxes, thus increasing the cost of maintenance and operation of the housing accommodation; (2) "for failing to make provision for adjustments in rents in cases of undue hardship"; and (3) "for failing to make provision for adjustment of rents in those cases where conditions beyond the control of the Protestant substantially increase the cost of maintenance and operation of the housing accommodation."
On December 10, 1942, the Administrator entered an order denying the protest. Claiming to be aggrieved by the denial, The Lakemore Company, pursuant to § 204(a) of the Act, filed its complaint in this court on January 9, 1943.
Complainant does not challenge the propriety of the Administrator's selection of July 1, 1941, as the maximum rent date. It makes no attempt to show that the maximum rentals established by § 4 of the regulation for housing accommodations in the Cleveland defense-rental area are not "generally fair and equitable" and will not "effectuate the purposes" of the Act  which is the standard prescribed in § 2(b) of the Act. And even as applied to complainant individually there is no claim that the regulation prevents it from earning a fair return on its property. Nor does it appear that complainant's net operating income under rent control is, or is likely to be, less than the net income from the property during comparable periods prior to rent control.
Much stress is laid by complainant upon the provision in § 2(b) of the Act that so far as practicable, in establishing maximum rents, the Administrator "shall make adjustments for such relevant factors as he may determine and deem to be of general applicability" in respect of housing accommodations within the particular defense-rental area, "including increases *358 or decreases in property taxes and other costs." But the record sufficiently indicates, and the Administrator in his opinion accompanying the denial of the protest has found, "that there has been no general increase either in assessed valuations or real estate taxes in Cleveland for the year 1941." At the argument before us counsel for complainant conceded this, and stated that so far as he knew, complainant was the only landlord affected by the regulation whose property had been subjected to an increase in the assessed valuation since July 1, 1941, the maximum rent date. This, therefore, cannot be deemed a factor of "general applicability" within the meaning of § 2(b). Furthermore, as we pointed out in Chatlos v. Brown, supra, even where there have been, since the maximum rent date, increased items of operating cost of admittedly general applicability, the failure of the Administrator to make provision for adjustment upwards of the established maximum rents does not necessarily demonstrate that such rents are generally unfair and inequitable, because there may be compensating factors as a natural result of war conditions, such as savings resulting from reduction of competitive expenditures, or increased gross revenue because of greater occupancy due to housing shortages enhanced by war activities.
For the purpose of acting on the protest the Administrator assumed the truth of protestant's sworn statement that its rentals on July 1, 1941, "were less than those rentals which were being received for comparable suites in the same neighborhood on said date." But the Act does not require the Administrator to establish a uniform maximum rent for all comparable housing accommodations. The maximum rent date method of rent stabilization, which Congress clearly authorized the Administrator to adopt, and which we upheld in the Chatlos case, rolls back and freezes rents as of an earlier date and at levels which landlords and tenants had worked out for themselves by free bargaining in a competitive market, prior to the time when defense activities had injected into the market an abnormal factor resulting, or threatening to result, in rent increases inconsistent with the purposes of the Act. As the Administrator points out, variations in maximum rents for comparable housing accommodations are inherent in this method of rent control since such differences exist in a normal competitive market. In explaining this familiar variation, complainant's counsel said at the argument that in normal times a landlord may find that by charging a lower rent there is a reduction in his vacancy losses and turnover, or he may thereby secure a better class of tenants. In the generality of cases (and so far as appears the present is no exception), in a normal competitive market each landlord presumably pursues the rental policy which in his judgment is most economically advantageous to him. The maximum rent date method of rent control recognizes the resulting differentials in rents, and preserves them. As stated above, § 5 of the regulation provides for individual adjustments in specified cases where the rent on the maximum rent date was not fixed by normal economic forces in a free competitive market, as, for instance, where the agreed rental was materially affected by the blood, personal, or other special relationship between the landlord and tenant, and as a result was substantially lower than the rent generally prevailing for comparable accommodations on July 1, 1941. But the present complainant was not entitled to an adjustment under any of these exceptional provisions.
Complainant contends that the increase in real estate taxes to which it was uniquely subjected has to that extent altered to its detriment its relative position with respect to the other landlords in the area as of the maximum rent date; and that even though it may not be entitled to such an upward adjustment of its rents as would put them on a parity with those generally prevailing for comparable accommodations on July 1, 1941, it should at least be given an adjustment in an amount equal to the increased taxes, so as to restore its relative position as aforesaid. We find no such requirement in the Act or in the Constitution. Furthermore, the suggestion is utterly unworkable, because it cannot be assumed that complainant is the only landlord who has had some unique item of increased operating cost. The Administrator could not possibly undertake to freeze as of a given date the relationship between the respective operating costs of the large number of landlords subject to the regulation.
The Administrator is given wide authority under § 2(c) of the Act to provide for adjustments and reasonable exceptions. Where he has prescribed maximum rents which are "generally fair and *359 equitable," he must be allowed considerable leeway in determining the extent to which it is practicable, in the effective administration of the Act, to assume the burden of passing on individual applications for adjustment. Some individual hardships are inescapable in a regulatory job of such magnitude, made necessary by the war emergency. If the Administrator broadly delegates power to regional subordinates to make adjustments in "cases of undue hardship," as suggested by complainant, there is a danger that the regulations will be discriminatorily administered in various areas. This is not to imply that complainant has made out a case of undue hardship; quite the contrary, we think that on this record it has conspicuously failed to do so.
In his opinion denying the protest the Administrator pointed out that it would be administratively impracticable to impose a program of rent control under which the formula for determining the maximum rent for a particular housing accommodation is based upon a determination of the generally prevailing rentals for comparable accommodations at a given date prior to the issuance of the regulation. In this connection the Administrator said: "Living accommodations are not sufficiently standardized to permit the determination of comparable rents without involved and lengthy investigations. The factors affecting rental values are numerous, complex and often intangible." We cannot say that this judgment of the Administrator is lacking in rational basis. And for the reasons already indicated we cannot say that the Administrator was arbitrary or capricious in failing to provide for individual adjustments based on individual cost increases, not of general applicability, incurred after the maximum rent date.
There remains to be discussed a point of procedure raised by complainant.
After the protest was filed the Administrator by order dated August 24, 1942, incorporated certain materials into the record of the protest proceeding. The order by its terms provided protestant an opportunity "to furnish such relevant evidence as it may desire in rebuttal of the aforementioned materials, together with such other relevant evidence as the protestant may desire to present," by filing such evidence in affidavit form within twenty days. Thus incorporated in the record was a table, derived from an official compilation issued by the City of Cleveland, showing assessed valuations and tax rates for Cleveland for the years 1938-1941. There was also incorporated a statement by the Administrator of an economic conclusion as to the relation in a normal competitive market between taxes and other costs of operation and rent. The sources of this conclusion were stated to be a certain publication issued by the Division of Economics and Statistics of the Federal Housing Administration, and "studies and investigations of operating expenses and rentals in 46 cities including Cleveland, Ohio, made by the Administrator pursuant to Section 202 of the Emergency Price Control Act of 1942." In further support of this statement of economic conclusion the Administrator by a subsequent order dated October 21, 1941, incorporated charts showing the relationship between housing rentals and expenses in twenty-one cities, including Cleveland, prepared by the Office of Price Administration, and based on studies and investigations made pursuant to § 202 of the Act. The order of August 24, 1942, in addition, incorporated a statement that the rents for comparable or even identical rental units in a free competitive rental market will vary. Reference was made to the official surveys and reports from which this conclusion was derived.
Complainant filed with the Administrator an objection to the incorporation in the record of these economic generalizations or conclusions. It did not, however, avail itself of the opportunity to submit rebuttal evidence.
We think complainant's objection to the procedure followed by the Administrator is not well taken.
Section 203(b) expressly authorizes the Administrator, in the administration of the Act, to "take official notice of economic data and other facts, including facts found by him as a result of action taken under section 202." Section 203(a) provides: "In the event that the Administrator denies any such protest in whole or in part, he shall inform the protestant of the grounds upon which such decision is based, and of any economic data and other facts of which the Administrator has taken official notice." Thus, consistently with statutory requirements, the Administrator could have waited until he had entered his order denying the protest before informing *360 protestant of the economic data of which he had taken official notice and of the economic conclusions which he had derived therefrom and the other grounds upon which the denial was based. Instead of that, and as a matter of grace, the Administrator offered protestant an opportunity, before the protest was acted on, to take a shot at the officially noticed economic data and the economic generalizations which the Administrator had formulated in his own mind in the course of performing his official duties.
It is objected that the Administrator thus in effect has prejudged the case; that as witness, immune from cross-examination, he has rendered an opinion which concludes the matter which is before him as judge.
This overlooks the fact that the Administrator, from the necessities of the case, does not come with a virgin mind to the consideration of a protest. He has previously performed the official act of issuing the regulation, the terms of which of course reflect his conclusions on many economic, administrative and legal questions. In this sense, he necessarily approaches consideration of a protest with certain "preconceived notions"  to use complainant's phrase. It is the object of the protest procedure to give the Administrator a chance to reconsider any challenged provisions in the regulation in the light of further evidence or arguments which may be advanced by the protestant. What the Administrator did here was to lay his cards on the table in the protest proceedings, offering protestant an opportunity to play its trump cards, if it had any.
Of course such statements of economic conclusions thus incorporated in the record are not "evidence." Section 204(a) requires the transcript of the protest proceedings, filed in this court, to "include a statement setting forth, so far as practicable, the economic data and other facts of which the Administrator has taken official notice." Insofar as any economic generalizations or conclusions formulated by the Administrator constitute indispensable steps in his process of reasoning in denying the protest, it is for this court to say whether they have any rational basis, in performance of our statutory duty to consider whether the regulation or order should be set aside in whole or in part as being "arbitrary or capricious." This is so, whether the Administrator includes such generalizations and conclusions in his opinion accompanying the denial of the protest or, as in this case, incorporates them into the record of the protest proceedings at an earlier stage in order to afford protestant an opportunity for rebuttal.
The complaint is dismissed.
Chief Judge VINSON heard the argument in this case and concurred in the conference decision of the court thereafter, but resigned before this opinion was prepared.