**BOWMAN et al. v. BOWLES,**
**Price Administrator.**

No. 88.

United States Emergency Court of Appeals.
Heard at Cincinnati Jan. 13, 1944.

Decided Feb. 24, 1944.

Rehearing Denied March 8, 1944.

Robert G. Adair, of Cincinnati, Ohio, for complainants.

Herbert H. Bent, Atty., of Washington, D. C. (Henry M. Hart, Jr., Acting Gen.' Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Sol M. Linowitz, Chief, Court Review Rent Branch, and Mavis M. Clark, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

This case involves the application to complainants' housing accommodations in Cincinnati, Ohio, of rent regulations established by the Price Administrator pursuant to the Emergency Price Control Act of 1942, 50 U.S.C.A. § 901 et seq. At the time this proceeding was commenced, two principal rent regulations were effective in the Cincinnati Defense-Rental Area. One, designated Rent Regulation for Housing (referred to in this opinion as the Housing Regulation), provided control over rents for housing accommodations other than hotels and rooming houses; the other, designated Rent Regulation for Hotels and Rooming Houses (referred to in this opinion as the Hotel Regulation), controlled rents for hotels and rooming houses.[1] These Regulations imposed the maximum

rent date method of rent control.[2] They became effective in the Cincinnati Area on November 1, 1942, and established March 1, 1942, as the maximum rent date.[3]

Complainants are managing operators of a building in Cincinnati known as the Rosedale Apartments which they claim has been operated for approximately ten years as an apartment hotel. After establishment of the Rent Regulations by the Administrator, complainants filed registration statements under the Housing Regulation for each of the thirty-two rental units in their building. In their registration statements complainants set forth the rent charged for each apartment on the maximum rent date and, in addition, what they describe as a sliding scale of rents. This scale provided higher weekly and monthly rates for each apartment when rented on a temporary basis than it provided for rental on a long term basis and also provided increased rates when an apartment was let to occupants beyond a specified number. After registering their accommodations, complainants were informed by letter from the Office of the Area Rent Director of the Office of Price Administration that the Housing Regulation made no allowance for a sliding scale of rents, and therefore, regardless of the term of occupancy or the number of occupants, the rent charged for each unit on the maximum rent date was the highest which might legally be charged.[4] By this letter complainants were advised that they might maintain a sliding scale of rents only by electing, with the consent of the Area Rent Director, to come within the Hotel Regulation; however, no assurance was given that consent would be granted if such an election were made.

The Hotel Regulation, which permits a sliding scale of rents for housing units subject to its control, provides, by Section 1 (e),[5] that a landlord may, with the consent of the Administrator, elect to register under the Hotel Regulation all accommodations in his building, if, while not coming within the definitions of a hotel or a rooming house, it contains one or more furnished accommodations rented on a daily, weekly, or monthly basis. The Section further provides that the Administrator shall consent to such election if he finds the provisions of the Hotel Regulation to be better adapted to the rental practices for such building than the provisions of the Housing Regulation. Pursuant to this provision, complainants, apparently conceding that their building did not come within the definitions of a hotel or rooming house,[6] prepared a registration statement for their housing accommodations under the Hotel Regulation and submitted it to the Area Rent Director, with a statement of their election to register the accommodations under the Hotel Regulation. After considering this proposed registration, the Area Rent Director found that the provisions of the Housing Regulation were better adapted to the rental practices for the building than the provisions of the Hotel Regulation and he refused to consent to complainants' election. Upon application

---

[2] For explanation of this method of control, see Hillcrest Terrace Corp. v. Brown, Em.App., July 27, 1943, 137 F.2d 663; Lakemore Co. v. Brown, Em.App., July 15, 1943, 137 F.2d 355; Taylor v. Brown, Em.App., July 15, 1943, 137 F.2d 654, certiorari denied 64 S.Ct. 194; Chatlos v. Brown, Em.App., May 28, 1943, 136 F.2d 490.

[3] The Regulations were also effective in other Defense-Rental Areas. A description of the Areas, and the effective date and maximum rent date which applied in each are contained in schedules attached to the Regulations.

[4] This view of the Area Rent Director accorded with an official interpretation previously made and published by the Office of Price Administration. Interpretation M. R.—VII, Pike & Fischer OPA Service 200:1120.

[5] The language of Section 1(e) which is pertinent to this case is quoted later in the opinion.

[6] The Hotel Regulation defines hotel and rooming house as follows:

"Sec. 13 Definitions.

&ast;  &ast;  &ast;  &ast;

"(13) 'Hotel' means any establishment generally recognized as such in its community, containing more than 50 rooms and used predominantly for transient occupancy.

"(14) 'Rooming house' means, in addition to its customary usage, a building or portion of a building other than a hotel in which a furnished room or rooms not constituting an apartment are rented on a short time basis of daily, weekly, or monthly occupancy to more than two paying tenants not members of the landlord's immediate family. The term includes boarding houses, dormitories, auto camps, trailers, residence clubs, tourist homes or cabins, and all other establishments of a similar nature."

for review, the Regional Administrator affirmed the Area Rent Director's order, whereupon complainants filed a protest before the Administrator, requesting that the orders previously made be reversed and that the Area Rent Director be ordered to consent to the registration of the Rosedale Apartments under the Hotel Regulation. The Administrator denied the protest and the complaint in this Court was filed.

In this Court complainants have not confined themselves to their claim of right to register under the Hotel Regulation. In their brief and at the oral argument of this case they have taken the position that if it is decided that their election to register within the Hotel Regulation was properly denied by the Administrator, this Court should grant alternative relief by construing the Housing Regulation as permitting a sliding scale of rents. The right of this Court to make such a construction in the present case depends upon the jurisdiction granted it by the Emergency Price Control Act of 1942. This Act authorizes any person subject to any provision of a regulation, order, or price schedule to file with the Administrator a protest specifically setting forth objections to any such provision. Sec. 203(a). It then provides that any person aggrieved by the denial of such a protest may file a complaint with this Court, "specifying his objections and praying that the regulation, order, or price schedule protested be enjoined or set aside in whole or in part." This Court is expressly limited to a consideration of objections to such regulation, order, or price schedule, which were set forth in the protest before the Administrator. Sec. 204(a). One purpose of the protest procedure is "to give the Administrator a chance to reconsider any challenged provisions * * * in the light of further evidence or arguments which may be advanced by the protestant."[7] Another purpose of the protest procedure is the development of a record on which this Court may review the validity of challenged regulations.[8] Inherent in these purposes and statutory provisions is the necessity for a protestant to specify clearly and intelligibly the objections he desires to make.[9] In considering a protest, the Administrator therefore is required to consider only those points which are set forth clearly; he is not obliged to search the record with care to find what objections may be present by way of innuendo, inference, or intimation. In this case complainants' point with regard to the construction of the Housing Regulation was not raised in the protest proceedings with sufficient clarity to have required the Administrator's consideration and ruling. The only reference we find in the record appears in a memorandum filed with an affidavit in support of the protest.[10] In this memorandum the point is discussed as part of a general argument that the plan of the rent control program is to permit continuance of practices in effect on the maximum rent date. There is no indication that complainants were actually requesting an interpretation of the Housing Regulation by the Administrator. Consequently this Court must accept the Administrator's interpretation of the Housing Regulation as not permitting a sliding scale of rents.

Because complainants make certain general contentions which might be said to bear upon the question of the adequacy of the Regulations, it seems appropriate to point out that nowhere in the proceedings has any attack been made upon the validity of the Regulations. Therefore, we must assume, so far as this case is concerned, that they provided a fair and adequate procedure for controlling rents of hotels, rooming houses, and other housing accommodations.

From what has been stated, it follows that upon the record as it is presented to this Court the sole question for decision is whether the Administrator acted arbitrarily, capriciously, or otherwise not in accordance with law by his refusal to consent to complainants' election to register their rental accommodations under the Hotel Regulation.

The provisions of Section 1(e) of the Hotel Regulation, upon which complainants base their claim, are as follows:

"Sec. 1(e) *Election by landlord to bring housing under this regulation.* Where a

---

[7] Lakemore Co. v. Brown, Em.App., July 15, 1943, 137 F.2d 355, 360.

[8] See Armour & Co. v. Brown, Em.App., August 6, 1943, 137 F.2d 233, 239.

[9] Cf. Todd v. Securities and Exchange Commission, 6 Cir., 1943, 137 F.2d 475, 479.

[10] This memorandum was omitted from the printed transcript of record, but after oral argument of the case was certified as a supplement to the transcript, pursuant to order of the Court.

building or establishment which does not come within the definitions of a hotel or rooming house contains one or more furnished rooms or other furnished housing accommodations rented on a daily, weekly, or monthly basis, the landlord may, with the consent of the Administrator, elect to bring all housing accommodations within such building or establishment under the control of this regulation. A landlord who so elects shall file a registration statement under this regulation for all such housing accommodations, accompanied by a written request to the Administrator to consent to such election.

"If the Administrator finds that the provisions of this regulation establishing maximum rents are better adapted to the rental practices for such building or establishment than the provisions of the Rent Regulation for Housing, he shall consent to the landlord's election. Upon such consent, all housing accommodations within such building or establishment which are or hereafter may be rented or offered for rent shall become subject to the provisions of this regulation * * *."

█ When an election is made under this Section, it is the obvious duty of the Administrator, in order to be able to determine whether he should consent to the election, to ascertain the rental practices for the building. Upon ascertaining this factual situation, it then becomes his duty to decide which of the two Regulations is better adapted to the practices for the building. In reviewing this procedure, this Court must follow the same course, but with a different approach to the questions. The Administrator approaches them free from any previous determination and guided by no presumptions. He may exercise an independent judgment. The Court, however, is not granted jurisdiction to pass an independent judgment with regard to the facts and their applicability to the proper Regulation, but is limited to a finding as to whether the Administrator acted lawfully. In exercising its function, the Court must presume that the proceedings were regular and in accordance with law and if the record discloses a reasonable basis for the conclusions of the Administrator, his decision must be upheld.[11]

In order to determine which Regulation is better adapted to the practices for the Rosedale Apartments, we have reviewed the plan of control provided by each. Generally, we find that the Administrator, in exercising his delegated authority over rents, issued the Housing Regulation to provide control for accommodations rented on monthly or longer terms and issued the Hotel Regulation to provide control over accommodations rented on daily, weekly or monthly terms. This distinction between the Regulations did not prevent many similarities. Both employ the maximum rent date method of control; both call for the maintenance of the services, furniture, furnishings and equipment provided on the maximum rent date; both contain similar provisions for adjustments in rents; both provide substantially the same grounds for evicting tenants; and both contain similar requirements regarding landlords' registration of their accommodations. However, differences in the types of business covered by the two Regulations required variations in their provisions. One variance is that the Housing Regulation makes no provision for a sliding scale of rents, whereas such provision is included in the Hotel Regulation. The right to seek adjustments has been granted in the Housing Regulation when there is a substantial increase or decrease in the number of occupants, but this is obviously quite different from the provisions of the Hotel Regulation which permit, without need of seeking an adjustment, a maximum rental schedule for daily, weekly and monthly terms and for varying numbers of occupants. Other provisions of the Hotel Regulation, clearly applicable to a business based on short term occupancies, are those requiring that no tenant be required to change his term of occupancy and that landlords continue to offer for rent on a weekly or monthly term of occupancy the same number of rooms so rented in June, 1942. The removal provisions of the two Regulations differ. The Housing Regulation, as would be expected for the protection of a long term tenant, requires a ten-day notice before removal proceedings may be commenced. The Hotel Regulation, designed to cover short term tenancies, contains no such notice provision. The Hotel Regulation requires that landlords post conspicuously in each of their rental units a card or sign stating the maximum rent or rents for all terms of occupancy and for all numbers of occupants. There is no need for this provision in the Housing Regulation, where it is only re-

---

11 Madison Park Corp. et al. v. Bowles, Em.App., December 27, 1943, 140 F.2d 316.

quired that the tenant be advised of the maximum rent for the unit.

What does the record show as the rental practices to which the provisions of one of the Regulations are to be adapted? It appears that for approximately ten years complainants have operated the Rosedale Apartments, a building containing thirty-two apartment units. Complainants allege that their practice during this period has been to operate under a sliding scale of rents. They aver that in periods of business depression they rented some units on a daily and weekly basis, but that in recent years they have been successful in eliminating daily and weekly, and, in the main, one and two month tenancies. The record shows that on March 1, 1942, the maximum rent date, thirty-one of the thirty-two units in the building were rented on an annual basis and one was rented on a semi-annual basis. Twenty-seven were rented either fully or partially furnished. On November 1, 1942, the date the Regulations were made effective, and on March 1, 1943, at or about the date when complainants sought to make their election to register under the Hotel Regulation, these circumstances were substantially the same. From the recited facts, it is evident that for at least a year before complainants sought to make their election, their business had all the characteristics of the usual apartment houses for which the Housing Regulation was designed. The rental agreements were for the usual long terms, there were available unfurnished accommodations, and other facilities provided were those generally found in apartment houses rather than in accommodations for transients.[12]

Complainants concede that this was their situation on the dates named, but they argue in effect that this was only a temporary state of affairs. They claim the plan of the Emergency Price Control Act was to authorize the freezing of a "whole status", rather than the particular rent which happened to be in effect on the maximum rent date. We understand it is conceded that if the practice on the maximum rent date was to fix a single charge for accommodations without regard to the length of occupancy or the number of occupants, the charge actually in effect on that date would be the maximum which might be made for future occupancies. However, it is urged that if the practice on the maximum rent date was to make different charges for varying terms of occupancy and for varying numbers of occupants, the rent which happened to be actually charged on the maximum rent date would not control future occupancies of a different character; in such case the maximum rents for future occupancies would be those provided by the sliding scale effective on the maximum rent date. From this contention complainants apparently draw the conclusion that if the practice of making varying rent charges is permitted only by the Hotel Regulation, they should be allowed to register under that Regulation notwithstanding its provisions are not as well adapted as those of the Housing Regulation to existing tenancies.

No mention of this argument was made by the Administrator in his opinion which accompanied denial of the complainants' protest. However, it seems from the position generally taken by him that he does not disagree with this principle of law contended for by complainants. As we have noted, he specifically recognized in the Hotel Regulation the practice of charging varying rents for different types of occupancy. But this view of the law does not compel a decision in favor of complainants. It is necessary for them to have established that in the Rosedale Apartments a practice of renting units on a sliding scale of rents was actually prevailing as of a time pertinent to the imposition of rent control. It is not sufficient for them to have established that at one time they engaged in such a practice, for if it had been discarded as of the time complainants sought to have it recognized, they would not be entitled to maintain it under the rent control program. The program obviously does not deal with extinct practices; a landlord may not revive such a practice in order to make possible the collection of higher rentals than those actually in effect on the maximum rent date. We understand that complainants agree with this view of the law, but apparently they have assumed that the record satisfactorily establishes the continuing existence of such a practice. Because of the importance of the point to the disposition of this case, we have examined the record before us with care to

---

12 For example, complainants provided laundry tubs, refrigerators, and cooking stoves, but did not furnish electricity. Maid service was furnished only on extra charge. Burned out electric bulbs were not replaced by complainants.

determine whether or not the record does have this effect.

█ In their protest before the Administrator and their complaint before this Court, complainants made general averments that for approximately ten years accommodations for transient guests have been at all times available in the Rosedale Apartments and that during this period the apartments have been operated under a variable or sliding scale of rents. In his answer to the complaint, the Administrator put these averments in issue. In the protest proceedings, while he made no express denial that the practice had been followed in earlier years, he did take the position of stressing as a significant fact the existence of long term occupancies in all the apartments since the maximum rent date. This position, if not a direct denial, was unquestionably inconsistent with an admission that any practice of renting to short term occupants on a sliding scale was currently being followed. In the record there is a statement of complainants to the effect that they had been "successful over a period of years in eliminating daily and weekly, and in the main, one and two months' renters." But it is apparent that for at least a year prior to complainants' election, they had been successful in eliminating all short term tenancies; there had been only one occupancy for a term shorter than a year and that was for six months. Not only does the record show the absence of any short term occupancies for at least a year, but it is devoid of any showing that during that year or at any time pertinent to the imposition of rent control, complainants had offered or held out their accommodations for short term occupancies. In this state the record strongly tends to support the conclusion that if complainants at one time had a practice of renting to short term occupants on a sliding scale of rents, such practice had passed into discard before the maximum rent date. Since no facts are shown in support of complainants' claim, they must rely as their sole basis for obtaining reversal of the Administrator's decision upon their general averments. In no case may unsupported averments not admitted by the Administrator be held to be of sufficient weight to overcome the presumption of

law that the Administrator's decision is proper. In this case, they are of even less weight, inasmuch as the usual presumption is supported by undisputed facts in the record. We conclude, therefore, that the decision of the Administrator must be sustained.

Complainants have alleged that other properties in Cincinnati similar to, or exactly like, the Rosedale Apartments have been permitted to register under the Hotel Regulation. We presume this allegation refers to other properties with rental practices comparable to those for the Rosedale Apartments. Thtre is nothing in the record, however, which bears out this claim. On the other hand, it clearly appears that if the Rosedale Apartments, with their existing tenancies, were to be registered under the Hotel Regulation, they would be governed by provisions different from those controlling other buildings in precisely the same state of occupancy.

█ Complainants have pointed to errors of fact made by the Regional Administrator at the time he denied their application for review of the order of the Area Rent Director. We think these errors have not resulted in prejudice to the complainants. The facts were correctly stated by the Area Rent Director in the first instance and by the Administrator in his final review of the protest claims. It is the decision of the Administrator in the latter proceedings with which we are concerned. There would be no point to a review by way of protest proceedings if errors committed at lower points in the procedure might not be corrected by the Administrator's final and controlling decision.

█ Complainants argue constitutional objections to the Emergency Price Control Act of 1942. It is questionable whether, since complainants made no such attack in their protest before the Administrator, they may do so here.[13] However, we find it unnecessary to decide this question, since in previous cases we have upheld the constitutionality of the Act against similar attacks.[14] There appears no need here to repeat our views.

The complaint is dismissed.

[13] See Todd v. Securities and Exchange Commission, 6 Cir., 1943, 137 F.2d 475, cited supra note 9.

[14] Taylor v. Brown, Em.App., July 15, 1943, 137 F.2d 654, certiorari denied, 64 S.Ct. 194; Avant et al. v. Bowles, Em. App., December 31, 1943, 139 F.2d 702.