**HASTINGS v. BOWLES, Price Administrator.**

**No. 91.**

United States Emergency Court of Appeals.
Heard at Boston, Feb. 8, 1944.

Decided Feb. 17, 1944.

Frederic A. Jenks, of Boston, Mass., for complainant.

Maurice Alexandre, of Washington, D. C., Attorney, with whom Richard H. Field, Acting General Counsel, Nathaniel L. Nathanson, Associate General Counsel, and Sol M. Linowitz, Chief, Court Review Rent Branch, all of the Office of Price Administration, both of Washington, D. C., were on the brief, for respondent.

Before MARIS, Chief Judge, and MA-GRUDER and LAWS, Judges.

MAGRUDER, Judge.

The protest in this case was against an order of the Acting Regional Administrator of the Office of Price Administration for the First Region, issued June 17, 1943, affirming an order by the Rent Director for the Eastern Massachusetts Defense-Rental Area which denied a petition for adjustment of the maximum rent of a certain apartment suite from $60 to $75 per month, which latter figure was claimed to be the prevailing rental for comparable accommodations on the rent freezing date.

For this area, the regulation prescribes as a general rule that for housing accommodations which were rented on March 1, 1942, the maximum rents shall be the respective rents in force on that date. In several exceptional cases a landlord is permitted to file a petition for adjustment to increase the maximum rent otherwise allowable. Section 5(a) (4) of the Rent Regulation for Housing, 8 F.R. 7322, 7325, which is the adjustment provision here in question, permits the filing of a petition for adjustment in the following situation:

*"Special relationship between landlord and tenant.* The rent on the date determining the maximum rent was materially affected by the blood, personal or other special relationship between the landlord and the tenant and as a result was substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date: Provided, That no adjustment under this subparagraph increasing the maximum rent shall be made effective with respect to any accommodations regularly rented to employees of the landlord while the accommodations are rented to an employee, and no petition for such an adjustment will be entertained until the accommodations have been or are about to be rented to one other than an employee."

Complainant Hastings is the owner of an apartment building at 53 Grove Street, Boston. For many years prior to June, 1938, suite 1 in this apartment building had carried a rent of from $75 to $80 per month. Thereafter, the suite became vacant because the landlord was not able to obtain his asking price, and it remained vacant for over a year. The property was subject to a mortgage which had fallen in

arrears, and the Franklin Savings Bank, the mortgagee, had been obliged to pay several years' back taxes. In 1939, the bank feeling that more income should be secured from the property to be applied toward reducing the mortgage debt, insisted, against the mortgagor's objections, that he accept any offer as low as $60 per month for suite 1. Hastings yielded on the point, rather than have the bank take over the property and obtain a deficiency judgment against him. The rental agent, acting on instructions from Hastings, listed suite 1 with several brokers at an asking price of between $75 and $85 per month, informing them, however, that an offer of $60 per month would be accepted if no higher could be obtained. In the fall of 1939 the suite was leased for $60 per month under a so-called "self-perpetuating lease" terminable by notice given by either party in the following June. This lease was terminated August 31, 1940, by virtue of a notice given by the tenant, and was immediately succeeded by a lease to a new tenant for the same rental. This lease in turn was terminated August 31, 1941, by virtue of a notice given by the tenant. The next succeeding lease, for the same rental, was terminated August 31, 1942, by notice given by the tenant.[1] During the summer of 1942 a lease was made to another tenant at $70 per month.

Thus, on the rent freezing date, March 1, 1942, the suite in question was being rented for $60 per month, and under the regulation this became the maximum rent. In an affidavit accompanying the protest the rental agent expressed the expert opinion that "had it not been for the restriction placed upon me by Mr. Hastings to accept offers as low as $60, I could have rented the apartment for from $75 to $85 per month, during the years he had to rent it at $60 per month"; the explanation being that it is the usual practice of renting brokers, in order to obtain a quick commission, to offer the property to prospective tenants at the minimum figure which the owner will accept.

■ The only question now before us is whether the Administrator was arbitrary and capricious in concluding that Hastings had failed to make out a case for adjustment of the maximum rent within the terms of § 5(a) (4) of the regulation, above quoted. Patrick Cudahy Family Co. v. Bowles, Em.App.1943, 138 F.2d 574. As we pointed out in Northwood Apartments, Inc. v. Brown, Em.App.1943, 137 F.2d 809, 814, the general purpose of this adjustment provision was to afford relief in cases where the rent in effect on the maximum rent date did not fairly represent a bargaining valuation of the property for rental purposes under the then existing market conditions of supply and demand, but embodied a rent concession given to a favored tenant on some personal motive.

In our opinion the Administrator was warranted in concluding that the rent in effect on March 1, 1942, was not "materially affected by the blood, personal or other special relationship *between the landlord and the tenant.*" (Italics ours.) There was a relationship between the landlord and the mortgagee, as a result of which the landlord felt obliged to accept an offer of $60 per month rather than to suffer a further period of vacancy in the hope of obtaining a better offer. No special concession was given to a particular tenant because of any relationship between him and the landlord. The tenant made his offer, and for want of a better offer the landlord accepted it. In fact, strictly business considerations governed both parties to the bargain.

■ Complainant urges that the general justification for the maximum rent date method of rent control is that rentals are thereby rolled back and frozen as of an earlier date at levels which landlords and tenants had worked out for themselves by free bargaining in a competitive market, prior to the time defense activities had injected into the market an abnormal factor resulting, or threatening to result, in rent increases inconsistent with the purposes of the Act; and that this justification is not present in the case at bar because the landlord was not in a free bargaining position due to the pressure which the bank had put upon him to accept any offer as low as $60 per month for the apartment in question. But the protest does not challenge the validity of the regulation for failure to provide an adjustment provision covering the type of situation here disclosed. If such had been the protest, then the argu-

[1] It is perhaps surprising that three successive tenants exercised their option to terminate the lease, if $60 per month was such a bargain for the suite.

ment might have been made that the situation here presented falls within the general pattern for individual adjustments already provided in the regulation, even though not fitting exactly in any of the specific enumerated categories, and that the Administrator, when the situation was called to his attention by the protest, acted arbitrarily in refusing to expand the adjustment provisions to cover the situation. Compare our decisions in Hillcrest Terrace Corp. v. Brown, Em.App.1943, 137 F.2d 663, and Northwood Apartments, Inc. v. Brown, Em.App.1943, 137 F.2d 809. We intimate no opinion as to the merit of such an argument, because the validity of the regulation is not now before us. All we have to decide, and all we do decide, is that the Administrator was warranted in concluding that the rent in force on March 1, 1942, was not materially affected by any special relationship between the landlord and tenant within the meaning of § 5(a) (4) of the regulation, and that therefore the Administrator was not in error in refusing to adjust the maximum rent in accordance with complainant's application under that particular adjustment provision.

The complaint is dismissed.