## BUCKEYE PARKING CORPORATION v. BOWLES, Price Administrator.

### No. 94.

United States Emergency Court of Appeals.

Heard at Washington Feb. 3, 1944.

Decided March 28, 1944.

J. H. Connaughton, of Philadelphia, Pa., for complainant.

Nathaniel L. Nathanson, Associate Gen. Counsel, of Washington, D.C., (Richard H. Field, Acting Gen. Counsel, Jacob D. Hyman, Chief, Court Review Price Branch, Ernest R. Mortenson, and Benjamin Chapman, Attys., all of the Office of Price Administration, all of Washington, D.C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

Complainant as the owner and operator of two parking lots in Columbus, Ohio, became subject to the provisions of Maximum Price Regulation No. 165, issued June 23, 1942, and effective July 1, 1942.[1] This Regulation established as the maximum price for complainant's parking services the highest price charged for the same services in March, 1942. On July 9, 1943, complainant, desiring to install new schedules of rates, forwarded to the District Office of the Office of Price Administration copies of its existing schedules and those which it proposed to put into effect, and requested an opinion as to whether the proposed rates would be in violation of the Maximum Price Regulation. The schedules submitted were as follows:

### THIRD AND BROAD STREETS

| PRESENT SCHEDULE | | PROPOSED SCHEDULE | |
|---|---|---|---|
| 1 hour | 17¢ | 1 hour 10 minutes | 20¢ |
| 2 hours | 28¢ | 2 hours 10 minutes | 30¢ |
| 3 hours | 39¢ | 3 hours 10 minutes | 40¢ |
| 4–12 hours | 44¢ | 13 hours | 45¢ |
| 12–24 hours | 66¢ plus 5¢ each | 25 hours | 70¢ |
| Theatre | additional hour | Theatre | 30¢ if over 2 hours 10 minutes |

### STATE AND FRONT STREETS

| PRESENT SCHEDULE | | PROPOSED SCHEDULE | |
|---|---|---|---|
| 1 hour | 17¢ | 1 hour 10 minutes | 20¢ |
| 2 hours | 28¢ | 2 hours 10 minutes | 30¢ |
| 3 hours | 39¢ | 3 hours 10 minutes | 40¢ |
| Theatre | 25¢ | 13 hours | 45¢ |
| | | 25 hours | 65¢ |
| | | Theatre | 30¢ if over 2 hours 10 minutes |

[1] 7 F.R. 4734.

On the same day the opinion was requested, complainant was advised that the rates proposed were not in violation of the Regulation. Later, however, pursuant to instructions from the Regional Office of the Office of Price Administration, this interpretation was revoked and complainant was ordered to revert to its former schedules. Against this order complainant filed a protest before the Administrator, which after consideration was denied. Thereupon complaint was filed in this Court seeking to have the revocation order reversed. While the complaint is directed in form against the revocation of the earlier interpretation issued by the District Office, nevertheless upon submission of the case by counsel for complainant, it was made clear that the substance of its claim is that the Regulation as interpreted is invalid.

The proposed schedules provided for discontinuance of the one hour parking rate of 17¢ and for substitution in its place of a one hour and ten minute rate of 20¢. This represents a 17.6% increase in the minimum price and an almost identical percentage increase in the length of time made available to short-time parkers. The proposed schedules would be more expensive to some long-time parkers (for example, 2 hours and 20 minutes would cost 40¢ under the new schedules and 39¢ under the old), and less expensive to others (2 hours and 5 minutes would cost 30¢ under the proposed schedules and 39¢ under the old). There is no dispute between the parties of the fact that a person desiring to park for one hour or less would have to pay 3¢ more under the proposed schedules than he pays under the present schedules. Complainant takes the position, however, that there is no actual increase in price embodied in its proposal for the reason that additional time is offered in proportion to the increase in price, the per minute charge remaining the same. Complainant also points to the lower prices which some customers would pay under the proposed schedules.

■ Since the installation of the proposed schedules would result in higher charges to some parkers, we are of opinion that the Administrator had the right to prevent it. It is immaterial that all parkers at complainant's lots would not be affected. Small increases of charges in times of threatened inflation have been held to be inconsistent with the purposes of the Act because of their effect when combined with others of the same kind.[2] By the same reasoning, increases in charges to a limited group of consumers are likewise inflationary and may be suppressed. It is immaterial that the per minute rate to be charged under the proposed schedules would be the same as it was formerly; the amount the purchaser pays, not the method of its calculation, is the test as to whether there is an increased charge or not. The selling of time for which the purchaser would have no use would not make the higher rate any less an increase in price. The customer would have to pay an additional amount which he did not have to pay on the maximum price date, in March 1942, and such additional payment, like any other increase in price, would have an inflationary effect inconsistent with the purposes of the Emergency Price Control Act 50 U.S.C.A. Appendix § 901 et seq.

Complainant argues that the Administrator's ruling is inconsistent with a prior interpretation issued by him, in which approval was given to the increasing of prices of commodities up to 20%, so long as there was a proportionate increase in size. The interpretation to which reference is made was rendered in an explanation of the General Maximum Price Regulation. It appeared in question and answer form, as follows:

"Do contents of the same kind, quality and brand or tradename, sold as units of sale in different sizes of containers or packages, constitute the same or different commodities under GMPR?

\*      \*      \*      \*      \*

"Independently of the method of pricing, different sizes put out by the same manufacturer are the same commodity, only more or less of it, in all cases except those in which the new size serves a distinctly different merchandising function \* \* \*. A new size—whether smaller or larger—which is added to a selling line may be priced as a different commodity so long as purchasers have a free choice between it and the previous larger or smaller size, respectively. Where the new size replaces the old in the selling line, the problem is more difficult. *In the case of increases in size the Office of Price Administration, as*

---

[2] Lincoln Sav. Bank of Brooklyn v. Brown, Em.App., 137 F.2d 228.

*a rule of thumb, will not regard the new size as serving a distinct merchandising function so long as the increase is less than twenty per cent. Within this limit it will permit the new size to be priced as the same commodity by the method of proportionate increase.* Any greater increase is a plainly different offering to the purchaser and must be priced accordingly."[3]

(Italics indicate portion relied upon by complainant.)

We find that this interpretation was made largely because of War Production Board restrictions on the use of certain materials. The use of larger size containers in packaging tangible commodities was being encouraged. By permitting proportionate increases in charges, the Office of Price Administration assisted in the material-saving program and at the same time provided an automatic method of setting new prices without going through the routine of establishing a price for a new commodity. This purpose, which is corroborated by the language of the interpretation itself, obviously has no application to a commodity such as parking services. But complainant contends in effect that unless the interpretation is made applicable to its services, the Regulation is unreasonable and discriminatory; that since services and tangible products are included within the definition of the term "commodity" as used in the Emergency Price Control Act,[4] the Administrator is compelled to apply the same principles of control to both. We think doubtless it is true the Administrator has an obligation to provide similar controls over the prices of commodities when the trade practices involved are the same, but where they are not, there is no requirement that the prices must be controlled in the same manner. Such a requirement would render price control incapable of effective execution and will not be read into the law simply because, as a legislative drafting device, services were included within the definition of the term "commodity". It is common knowledge that practices with respect to pricing commodities differ according to their character, their accessibility, demands in the trade, and numerous other considera-

tions, and further that practices with respect to charging for services customarily differ from the practices followed in pricing tangible commodities. The existence of several hundred maximum price regulations, each designed to fit the problems and practices of a particular industry, makes obvious the importance of applying dissimilar controls to the differing problems which surround different commodities. There is nothing unfair in the recognition of these differences; on the contrary, an inflexible rule which ignored them would prove to be inequitable in a large number of instances.

From what has been stated, it is clear that unless complainant has established that there is no substantial difference between the pricing practices relating to parking services and those involved in the sale of tangible products, its claim of discrimination must fail. Complainant submits that it has successfully established there is no such difference. It urges that its commodity (parking services) may be broken into different sizes, based on the length of time purchased; one hour of parking time is urged to be a size of a commodity fairly comparable to a gallon of a tangible article such as paint; two hours of parking time is said to be comparable to two gallons of paint; and so on. But this comparison does not take into account substantial differences. The purchaser of a tangible product receives all for which he pays. He has complete control over it to do with as he likes; he may use it at a later time, he may give it away or dispose of it for profit. The short-time parker does not have the same choice. He takes the full parking time at the time of purchase, or he leaves it; his control, unlike that of the purchaser of a tangible product, is limited. This important difference is enough to distinguish the pricing practices in connection with parking services from those prevailing in connection with tangible products and to justify different treatment by the Administrator of the two types of commodities.

Another attack by complainant is based upon Section 4(d) of the Act which

---

[3] Pike & Fischer OPA Service 11:-1026.

[4] Sec. 302(c) "The term 'commodity' means commodities, articles, products, and materials * * * and it also includes services rendered otherwise than as an employee in connection with the processing, distribution, storage * * * of a commodity, or in connection with the operation of any service establishment for the servicing of a commodity: * * *."

states: "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent." The contention is made that the adoption of the proposed schedules in effect would amount simply to a discontinuance of complainant's one hour service and the substitution in its place of a service of a different size and that the effect of the Administrator's order is to force complainant to sell its one hour service. The answer to this contention obviously is that the Administrator is not interfering with complainant's right to discontinue the one hour service. It may discontinue the service if it desires, but may not inaugurate a program which will have the effect of increasing its minimum charge.

Having reached the conclusion that the proposed schedules would result in price increases inconsistent with the purposes of the Act and the complainant having failed to show any reason compelling the allowance of such increases, we have no doubt as to the legal right of the Administrator to prohibit them. A regulation interpreted so as to prevent such increases is a valid exercise of the Administrator's authority. Sec. 2(a), Emergency Price Control Act of 1942. In this view, complainant's case must fail, and it is not necessary to consider the right of the Administrator, in the absence of a showing of fraud or subterfuge, to prohibit the introduction of the proposed schedules as a manipulative practice under Section 2(d) of the Act or as a circumvention or evasion of price control which may be prevented under Section 2(g).

The complaint is dismissed.