**ROTH HOTEL CO. et al. v. BOWLES, Price Adm'r.**

**No. 128.**

United States Emergency Court of Appeals.

Heard at Minneapolis May 31, 1944.

Decided Aug. 14, 1944.

---

Josiah E. Brill, of Minneapolis, Minn., for complainants.

Warren L. Sharfman, Chief, Court Review Rent Branch, of Washington, D. C., (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Maurice Alexandre, Atty., all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LAWS, Judges.

LAWS, Judge.

Complainants are operators of three competing hotels located in the downtown commercial district of St. Paul, Minnesota. They complain to this Court by reason of the Price Administrator's denial of a joint protest against Maximum Rent Regulation No. 54A, issued October 22, 1942, and becoming effective November 1, 1942.[1] The Regulation established as the maximum rent for a room in a hotel or rooming house in the Minneapolis-St. Paul Defense-Rental Area the highest rent for each term or number of occupants for which the room was rented during the thirty-day period ending on March 1, 1942. If a room was offered for rent for a particular term or number of occupants during such period but was not actually rented for such term or number of occupants, the maximum rent established by the Regulation was the regularly offered rent.

The record discloses that during the year 1941 identical five-year union contracts were executed by each complainant with its employees, the contracts providing for the right of either party each year to re-open negotiations concerning wages, hours, and working conditions and for arbitration in case of unsettled disputes. Pursuant to these provisions new wage agreements were made in July 1942, to provide union employees with wage increases approximating 11%, effective retroactively to May 16, 1942. Comparable increases were granted to non-union employees and proportionate increases in workmen's compensation insurance and social security taxes were paid by complainants. Late in July 1942, complainants raised their rents in varying amounts up to 11% to compensate for these extra costs. The issuance of the Maximum Rent Regulation in October 1942, made it necessary for them to relinquish the increased charges. In August 1943, it appears that complainants, as the result of negotiations under their employment contracts, were preparing applications to the National War Labor Board

[1] Effective June 1, 1943, the Regulation was combined with other similar regulations and redesignated Rent Regulation for Hotels and Rooming Houses. 8 F.R. 7334.

for approval of further wage increases. There is evidence in the record which tends to show that rentals of Minneapolis hotels, said to be comparable to those of complainants in St. Paul, are approximately 10% higher than those charged by complainants. It is claimed these higher rates were fixed before the maximum rent date partly in anticipation of the necessity of paying increased labor costs. Application is made to this Court for an order directing the Administrator to amend the Rent Regulation by making an adjustment provision which will permit complainants to raise their rents by 10% or such other amount as the Court shall find to be just.

By Section 2(c) of the Emergency Price Control Act of 1942,[2] the Administrator is authorized to provide for individual adjustments of maximum rents fixed by a Regulation. This Section reads that "Any regulation or order * * * may be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act." The language vests in the Administrator a broad discretion in determining what provision, if any, should be made for individual adjustments,[3] although the exercise of his discretion is subject to review in this Court to determine whether it was arbitrary or capricious.

In the case of Hillcrest Terrace Corp. v. Brown,[4] principally relied upon by complainants to sustain their claim, we found the Administrator should have expanded the adjustment provisions for the reason that the situation of the complainant in that case, although not within the specific coverage of adjustment provisions in the Regulation, nevertheless fell within their general pattern. The provisions incorporated by the Administrator had been drawn in conformity with a general pattern of permitting increases in "those limited classes of cases where experience has shown that an increase after the rent-freezing date would have been likely in a normal rental market even in the absence of a housing shortage brought about or accentuated by

defense and war activities." The Hillcrest Corporation, organized in conformity with the National Housing Act,[5] had given to its tenants the benefit of a temporary tax exemption applicable to newly constructed real estate under the laws of South Dakota. It was established by objective proof that the rent schedule had been deliberately set below the level which could have been reached through a normal bargaining process. It was known at the time the original rent schedule was established that after the tax exemption expired, it would not be economically sound, as required by the National Housing Act, and accordingly there was a definite understanding that increases would be made upon the expiration of the period of tax exemption. Under these circumstances, we found it fair to infer that an increase of rental charges would have been likely in the absence of defense activities and therefore granted relief to the complainant.

Complainants have not established a case fairly comparable to that of the Hillcrest Corporation. They have presented no tangible proof in this case, as was done in the Hillcrest case, that the rents charged by them on the maximum rent date had been deliberately set below the level attainable in the market and that increases would have followed regardless of defense activities. Complainants simply make the contention that the rents they were receiving on the maximum rent date did not reflect the true level which they could have obtained by free bargaining in the existing market and to support their contention cite the higher levels prevailing in what are said to be comparable hotels in Minneapolis. They urge also that on the maximum rent date they were already being subjected to demands for higher wages under their union contracts. By their assertion that hotels in the neighboring or so-called twin city of Minneapolis were receiving higher rents for comparable accommodations complainants do not establish that higher rents could have been commanded by them in St. Paul on the maximum rent date. Differences in rents for comparable accommodations commonly exist in a normal competitive market.[6] Moreover, the fact that complainants were

---

[2] 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq.

[3] Lakemore Co. v. Brown, Em.App.1943, 137 F.2d 355, 358.

[4] Em.App.1943, 137 F.2d 663, 665.

[5] 52 Stat. 16, 12 U.S.C.A. § 1713.

[6] Lakemore Co. v. Brown, Em.App.1943, 137 F.2d 355, 359.

subject to wage demands on the maximum rent date does not establish that they could have commanded higher rents in the market. Such demands may have led them to consider the advisability of raising rents, but their consideration of the question would not establish their ability to make the increases. Under the maximum rent date method of rent control, effect is not given to rent increases which a landlord has been considering but has not placed in effect.[7] We therefore find that complainants have not shown a situation falling within the general pattern of the adjustment provisions of the Regulation and that their case is not within our decision in the Hillcrest case.

■ Complainants also attempt to establish an analogy between their situation and that contemplated by Section 5(a) (5) of the Regulation. By this Section provision is made for individual rent adjustments for landlords who had been bound to the rents prevailing on the maximum rent date by a lease whose term commenced more than a year before the date,[8] and who therefore had no opportunity to bargain for other rates in light of the conditions at any time at or about the maximum rent date. In the case before us complainants were free to bargain on and at all times before the maximum rent date with respect to the charges for their hotel accommodations. The union contracts dealing with wages had no relation to the charges for rentals and they are not shown to have interfered in any sense with the right or ability of complainants to increase their rental charges. We find complainants' situation therefore is not comparable to that of the landlords referred to in Section 5(a) (5).

■ Complainants' position with respect to their rental charges appears to us to be comparable to the position of other landlords who subsequent to the maximum rent date have been subjected to cost increases peculiar to themselves. In such cases we have uniformly held that the Administrator need not provide for relief.[9] In this view of the law, it is immaterial to a decision of the present case whether the wage increases granted by complainants were voluntary or compelled by arbitration proceedings, a point on which the record before us is not clear.

■ It is claimed that the Administrator unfairly discriminated against landlords by providing for sellers of services the right to obtain price adjustments when subjected to substantial hardships because of cost increases not reflected in their ceiling prices and when such increases threatened the continued supply of the service.[10] Complainants maintain that the Administrator thus recognized the principle for which they are contending, but discriminated by his failure to apply the same principle to landlords. We find that on November 2, 1942, the Administrator eliminated the provision for adjustment of the prices of services;[11] therefore it may not

---

[7] Northwood Apts. Inc. v. Brown, Em. App.1943, 137 F.2d 809, 813.

[8] "§ 5 (a) *Grounds for increase of maximum rents.* Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the ground that: * * *

"(5) *Lease for term commencing one year or more before maximum rent date.* There was in force on the maximum rent date a written lease, for a term commencing on or prior to the date one year before the maximum rent date, requiring a rent substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date." Pike & Fischer OPA Service 200:406.

[9] Suburban Park Apts. Corp. v. Bowles, Em.App.1943, 139 F.2d 838; Lakemore Co. v. Brown, Em.App.1943, 137 F.2d 355, 358.

[10] The provision referred to by complainants was § 1499.114(b) of Maximum Price Regulation No. 165—Services. It provid-

ed as follows: "Any seller, who finds that the maximum price of a service established for him under the provisions of §§ 1499.102 or 1499.103 subjects him to substantial hardship because of cost increases (1) incurred between February 1, 1942, and April 27, 1942, not reflected in the prices which are established for him under the above provisions, including any increase subsequent to April 27, 1942, resulting from a collective bargaining contract or other wage agreement which contract or agreement (i) was entered into on or prior to April 27, 1942, and (ii) provides for an unconditional increase in wage rates of a fixed amount or percent, and (2) where such cost increases threaten the continued supply of the service, may file an application for adjustment of that maximum price in accordance with Procedural Regulation No. 1. * * * *" Pike & Fischer OPA Service 15:451-S.

[11] Amendment No. 5 to Maximum Price Regulation No. 165. 7 F.R. 8943.

be said at the present time that discrimination exists as between control of service prices and control of rents. Moreover, complainants have not shown that they have been caused substantial hardship by the wage increases to which they have been subjected since the maximum rent date or that the supply of housing is threatened. It therefore appears unlikely that complainants could qualify under the adjustment provision which they seek. But if they could, they have not made out a case of discrimination. In order to establish such a case, they must establish that all relevant factors involved in providing individual adjustments in rent ceilings are the same as those involved in providing adjustments for service prices.[12] As the Administrator points out by his brief, factors relevant to these controls may reasonably differ. In this connection he has suggested the following considerations relevant to the granting of individual adjustments: the number of individual charges which are subject to adjustment, the importance of an increase with reference to the cost of living, the effect of an adjustment with respect to the maintenance of essential supply, and the degree of standardization of the commodity or service being priced. It seems to us unquestionable that these and doubtless other factors must be given consideration in making provisions for individual adjustments. There is no showing in this case that rent control and control of service prices are comparable in these respects, and without it we are not justified in finding that the Administrator was arbitrary because he made different adjustment provisions.

Complainants make other contentions which appear to be based on the proposition that the Administrator is obligated to provide uniform rates for comparable accommodations. That he has no such obligation is now well settled[13] and we find it unnecessary here to elaborate on the point.

From what has been stated, it follows that complainants' case must fail and accordingly their complaint will be dismissed.

[12] Cf. Equitable Trust Co. et al. v. Bowles, Em.App.1944, 143 F.2d 735; Buckeye Parking Corp. v. Bowles, Em. App.1944, 141 F.2d 692.

31 C.C.P.A.(Patents)

[13] Lakemore Co. v. Brown, Em.App. 1943, 137 F.2d 355, 358.