**VILLAGE APARTMENT HOMES, Inc., v.
BOWLES, Price Adm'r.**

Nos. 104, 173.

United States Emergency Court of Appeals.

Heard at Chicago Jan. 19, 1945.

Decided May 18, 1945.

650

Harry E. Ryan, of Minneapolis, Minn., for complainant.

Robert T. Mack, Atty., Office of Price Administration, of Chicago, Ill., and Warren L. Sharfman, Chief, Court Review Rent Branch, of Washington, D. C. (Richard H. Field, General Counsel, and Nathaniel L. Nathanson, Associate General Counsel, Office of Price Administration both of Washington, D.C., on the brief), for respondent.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

LAWS, Judge.

Claim is made in this case by an owner of apartment houses that adjustments of rents under provisions of the Rent Regulation for Housing should be granted, and the alternative claim is made that, if the adjustments are not granted, the Regulation is invalid.[1]

Complainant owns two apartment projects in the Minneapolis-St. Paul Defense-Rental Area. One, known as Fair Oaks Apartments, consists of 224 apartments; the other, known as Highland Village, consists of 265 apartments. The projects, which were opened for occupancy during 1939 and the first six months of 1940, were financed under Section 207, Title II, of the National Housing Act.[2] By that Act the Housing Administrator was authorized to insure mortgages covering properties "which, until the termination of all obligations of the Administrator under such insurance, are regulated or restricted by the Administrator as to rent or sales, charges, capital structure, rate of return, and methods of operation to such extent and in such manner as to provide reasonable rentals to tenants and a reasonable return on the investment." The Housing Act further provided that the Administrator should not accept a mortgage for insurance unless he "finds that the property or project, with respect to which the mortgage is executed, is economically sound." In accordance with these provisions, a rental schedule was worked out for each of complainant's projects under the direction and with the approval of the Housing Administrator. Rents were permitted to be charged below, but not above, the established schedules.

· The original mortgage loans on the projects provided for the deferment of principal payments for 18 months, followed by monthly payments approximating $33,000 per year. The deferment was granted apparently in anticipation of delay in filling the projects. When the properties were

[1] The petitions for adjustments and protests were filed in connection with Maximum Rent Regulation No. 53, which was effective in the Minneapolis-St. Paul Defense-Rental Area. That Regulation has been combined with other rent regulations and redesignated Rent Regulation for Housing. 8 F.R. 7322.

[2] 52 Stat. 16, 12 U.S.C.A. § 1713.

opened they were in many respects incomplete. Because of this and, further, because the projects were large and unusual in the territory and were opened almost simultaneously, rental resistance was encountered. These conditions brought about concessions below the approved rental schedules. The rent received was insufficient to support any amortization of principal or to meet taxes, and in the Spring of 1940 the mortgage on each of the projects was foreclosed, the properties being purchased by the mortgagee. A one-year period of redemption followed, during which the rental income was disbursed only for operating expenses, insurance premiums and necessary physical improvements to complete the projects. During this period rentals below the approved schedules were continued.

The mortgagee, upon having its indebtedness satisfied at the expiration of the respective redemption periods, conveyed its interest in the projects to the Housing Administrator. Thereafter, on October 15, 1941, the Housing Administrator sold both projects to complainant under agreements which provided for the further deferment of principal payments for one year. At the end of the year, the deferment of principal payments was further extended to March 1943. After March 1, 1942, rents were increased to the schedule rate as leases expired and new apartments were rented. On October 22, 1942, Maximum Rent Regulation No. 53 was issued by the Price Administrator, March 1, 1942 being fixed as the maximum rent date. This resulted in complainant's being compelled to reduce the rents for some of its apartments.

In December 1942, complainant filed with the Area Rent Director of the Office of Price Administration petitions for adjustment to increase the rents for 38 of its apartments. The petitions were denied and complainant filed protests before the Price Administrator. These protests also were denied and the complaint designated as No. 104 was filed in this Court. While complainant's adjustment proceedings were pending, it also filed a protest before the Administrator challenging the validity of the Regulation. This protest was denied and complaint No. 173 was filed in this Court.

In case No. 104 complainant by its protest before the Administrator made no attack upon the validity of the Regulation. Such an attack was made in the complaint filed in this Court, but on motion of the Administrator, was stricken, leaving for our determination in that case only the claims for upward adjustment of rents under provisions of the existing Regulation.

 The complainant appears to argue that a proper interpretation of the Emergency Price Control Act of 1942, 50 U.S.C. A.Appendix, § 901 et seq., and of the Rent Regulation requires relief to be given by the Administrator in individual cases where the frozen rents will not yield an amount sufficient to carry the property and bring about a fair amortization of the principal sum due on the property. Neither the Act nor the Regulation calls for such interpretation.[3] Under the maximum rent date method of rent control, authorized by the Act and carried into effect by the Regulation, it was assumed that in a normal rental market, landlords generally would have in effect rents which were fair and reasonable and no attempt was made to require the Administrator to pass upon individual cases where landlords might have had poor bargains in effect on the maximum rent date.[4]

 Further in support of its claim that it is entitled to adjustments under existing provisions of the Regulation, complainant relies upon Section 5(a) (4), which permits an upward adjustment of rent which on the maximum rent date was "materially affected by the blood, personal or other special relationship between the landlord and the tenant and as a result was substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date * * *." Complainant contends that a special relationship within the meaning of this Section resulted from a deliberate plan dictated by the Federal Housing Administrator to pass on to tenants the benefit of the deferment of principal payments in order to facilitate the "filling up" of the projects and that under the plan rents were to be increased to the approved schedules after the deferment terminated. In the declaration of this contention complainant maintains also that

---

[3] Madison Park Corporation et al. v. Bowles, Em.App., 1943, 140 F.2d 316.

[4] Bibb Manufacturing Co. v. Bowles, Em.App., 1944, 140 F.2d 459; Lakemore Co. v. Brown, Em.App., 1943, 137 F.2d 355.

due to the large vacancy rate in both projects the landlord was not free to bargain with proposed tenants on the maximum rent date, but was compelled to grant concessions in order to secure occupancy.

Complainant's situation does not fall within Section 5(a) (4). This Section relates to cases in which, as the result of a special relationship between landlord and tenant, a rent concession has been given a favored tenant on some personal motive and the transaction does not represent a bargaining valuation of the property for rental purposes under the existing market conditions of supply and demand.[5] In the case before us no special relationship existed between the landlord and its tenants. If it be granted the concessions in rent for complainant's apartments were made at the request of the Federal Housing Administrator, the special relationship existed between the landlord and the insurer of its mortgage, not between the landlord and its tenants.[6] More than this, the fixing of the rents involved no personal motives which resulted in a sacrifice of available economic benefits. The evidence before us is clearly contrary to the position that complainant's rents on the maximum rent date did not represent a bargaining valuation of the apartments. The presence of a high vacancy rate and the desire to fill the projects undoubtedly influenced the landlord's position in setting rents for his apartments, but of course these considerations are usual in the bargaining process.

■ In some of its petitions for adjustment, complainant asserted a right to relief under Section 5(a) (3), providing for adjustment in cases of a substantial increase in services, furniture, furnishings or equipment since the maximum rent date, and under Section 5(a) (5), providing for adjustment when the maximum rent under the Regulation was fixed by a lease for a term commencing at least one year before the maximum rent date and was substantially lower than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations. In its briefs and argument of the case complainant did not press these claims. Nevertheless, we have examined the record as to each petition and have found no facts sufficient to warrant a ruling that the Administrator was in error in denying the petitions for adjustment under these Sections.

■ Complainant has also suggested that it is entitled to an adjustment under Sections 5(a) (11) and 5(a) (12), which were incorporated into the Regulations pursuant to the Stabilization Extension Act of 1944.[7] Inasmuch as no petitions for adjustment under these Sections have been filed with the Administrator, we may not in this case review the application of these Sections to complainant.

■ We next consider complainant's claims in case No. 173, in which it is asserted that if complainant is not entitled to the adjustments which it seeks, the Regulation is invalid. Complainant maintains that on the maximum rent date it was enjoying a temporary deferment of substantial cost factors, which, at the direction of the Housing Administrator, it passed on to its tenants in order to attract tenants to its projects; that it had the definite plan of raising the rents, when the deferment expired, to the levels approved by the Housing Administrator as reasonable and necessary to the economic soundness of the projects. Emphasis is placed on the fact that the rents which complainant seeks were approved by the Federal Housing Administrator prior to the advent of defense activities, as normal and reasonable for the properties. These circumstances are said to bring complainant within the pattern of the adjustment provisions of the Regulation and therefore, under the principle announced by this Court in Hillcrest Terrace Corporation v. Brown,[8] to entitle complainant to an individual adjustment provision made to fit its circumstances.

The individual adjustment provisions of the Regulation were designed, generally, to provide relief for those landlords whose rents on the maximum rent date did not represent a bargaining valuation of the property for rental purposes as of that date or where some change in the accommoda-

---

[5] Hastings v. Bowles, Em.App., 1944, 140 F.2d 981; Bibb Manufacturing Co. v. Bowles, Em.App., 1944, 140 F.2d 459; Northwood Apts., Inc. v. Brown, Em. App., 1943, 137 F.2d 809.

[6] Cf. Hastings v. Bowles, Em.App., 1944, 140 F.2d 981.

[7] 58 Stat. 632, 50 U.S.C.A.Appendix, § 901 et seq.

[8] Em.App.1943, 137 F.2d 663. See also Roth Hotel Co. et al. v. Bowles, Em.App.1944, 144 F.2d 877; Northwood Apts., Inc. v. Brown, Em.App.1943, 137 F.2d 809.

tions had taken place after the maximum rent date, which altered their rental value.[9] It is evident that complainant's circumstances do not fall within this pattern. As we previously have indicated, complainant's rents on the maximum rent date were the product of a normal bargaining process between itself and its tenants, and there has been no showing of any change in the accommodations which would warrant the increases sought by complainant.

Complainant seeks to draw another analogy between its circumstances and those of complainant in Hillcrest Terrace Corporation v. Brown, supra. In that case we found the complainant was entitled to an individual adjustment because its rents on the maximum rent date had been deliberately reduced to give tenants the advantage of an elimination of cost or expense in the form of a special tax exemption available under the laws of South Dakota to newly constructed buildings, with the understanding of all concerned that appropriate increases would be made upon the expiration of the exemption. In the instant case complainant did not deliberately reduce the rentals on its apartments because of the elimination of some cost factor; it was forced by the condition of the rental market to make concessions. Moreover, there is no showing of any understanding between all the parties that rents would be increased after the deferment expired. To be sure, complainant and the Housing Administrator hoped to be able to raise the rents, but there was no assurance that higher rents could be obtained.[10] In the Hillcrest case a rental schedule was arrived at after consideration of market conditions of supply and demand for rental accommodations and the rents were then deliberately set at a lower level in order to give tenants the benefit of a temporary exemption from a cost item. In the case before us, rents were fixed at a level as high as market conditions would allow. Moreover, principal payments, unlike taxes, are not elements of cost or expense. The deferment of principal payments granted complainant under its sales contracts reduced the cash outlay required of complainant during the deferment period, but principal payments are applied to purchase price; they are not expenses.[11] Accordingly, there would be no

justification for voluntarily reducing rentals, and thereby income, because of a deferment allowed in principal payments.

Complainant has emphasized the plan to raise the rents of its apartments after the deferment of principal payments due on the property. This contention leads us to believe that a misunderstanding has arisen from language we used in the Hillcrest case, supra, and in the case of Roth Hotel Co. et al. v. Bowles.[12] We did not undertake to say in those cases, as appears to be assumed, that a right to individual relief under a Regulation may be established by showing that rents would have been raised in the normal course of events and in the absence of defense and war activities. The likelihood must be considered together with the presence or absence of the usual bargaining process. If it is found that rents in a particular case were established without reference to the usual bargaining process, it may be logical to assume that increases would have taken place in the absence of defense activities, but to authorize adjustments on the basis alone of likely increases in a normal market would involve highly speculative determinations and estimates which would be inconsistent with the basic theory of the maximum rent date method.

Complainant argues that the rent schedules were approved by the Housing Administrator as reasonable and necessary to the economic soundness of the projects and therefore no purpose of the Act is served by denying complainant the right to such rents. The Price Administrator, however, is entrusted with the responsibility for guarding the economy of the nation against the ravages of inflation and in carrying out his responsibility he is directed to establish maximum rents which are generally fair and equitable. It is immaterial whether such rents in an individual case coincide with rents found to be reasonable or economically sound by another Government agency entrusted with a responsibility totally different from that of the Price Administrator.

In its opening brief complainant argued that its projects were exempt from the operation of the Regulation because the fee simple title to them is vested in the

---

[9] Hillcrest Terrace Corporation v. Brown, supra.

[10] Cf. Roth Hotel Co. et al. v. Bowles, Em.App.1944, 144 F.2d 877.

[11] Cf. Madison Park Corporation et al. v. Bowles, Em.App.1943, 140 F.2d 316.

[12] Em.App.1944, 144 F.2d 877.

654

Housing Administrator, a representative of the Federal Government. In its reply brief complainant appears to abandon this contention and to argue that since the Federal Government holds the fee simple title to the apartments, they are entitled to have their rents established on the basis of rents for comparable accommodations in the manner provided by Section 4(g) of the Regulation for "housing accommodations constructed by the United States or any agency thereof, or by a State of the United States or any of its political subdivisions * * * and owned by any of the foregoing * * *." Complainant's situation obviously does not fall within the provisions of this Section which requires not only that the accommodations should be owned by the Government agency but also that such agency must have constructed them.[13]

Complainant has advanced several other contentions which we have considered, but found to be lacking merit.

Judgments will be entered dismissing the complaints.

---

[13] See Northwood Apts., Inc. v. Brown, 137 F.2d 809 (E.C.A.1943).