## PORTER v. HILLS.

### No. 5807.

District Court, D. Kansas, First Division.

Oct. 29, 1946

Lawrence J. Wetzel, of Wichita, Kan., for plaintiff.

George D. Rathbun, of Manhattan, Kan., for defendant.

MELLOTT, District Judge.

This is an action to recover from the defendant the sum of $856, alleged to be three times the amount of overcharges made by him for housing accommodations in a Defense-Rental Area. It was tried to the court and at the conclusion of the evidence the parties were granted time within which to file briefs in support of their respective contentions as to the issue of law involved. There is now no controversy as to the facts, which are summarized in the following paragraphs of this opinion.

Defendant is the owner of rental property located in Manhattan, Kansas, consisting of six furnished apartments. Two of them are not included in the issues in this case. The four in issue are set out in column 1 of the schedule below. The apartments were not rented on April 1, 1941, nor on July 1, 1942, the pertinent dates contemplated by the applicable statute and the regulations promulgated by the administrator. (For a full discussion of the basic dates see Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.)

The apartments referred to in column 1 were registered within thirty days after they were first rented at the figures shown in column 2 of the schedule. Subsequent to the registration of the apartments by the landlord the rent was fixed by the then rent di-

rector, C. B. Dodge, Jr., at the amounts shown in column 3 of the schedule. On March 7, 1945, B. W. Diggle, successor to C. B. Dodge, Jr. and the then area rent director for the Manhattan Defense Rental Area, fixed the rent of the apartments at the amounts shown in column 4 of the schedule.

exclusive of caption and signatures, being as follows:

"Upon reinvestigation of the above matter in which an order was entered on December 13th, 1943 the Rent Director proposes to withdraw order issued December 13th, 1943 and substitute therefor a rental of $43.50 per Mo.

| Col. 1 | Col. 2 | Col. 3 | Col. 4 |
|---|---|---|---|
| Apartment | Amount Fixed By Landlord | Amount Fixed by Dodge Dec. 17, 1943 | Amount fixed by Diggle, March 7, 1945 |
| Basement | $55 | $50 | $37.50 |
| 1st Fl. East | $85 | $65 | $43.50 |
| 1st Fl. West | $80 | $65 | $43.50 |
| 2nd Fl. West | $75 | $65 | $43.50 |

The orders signed by Dodge, exclusive of caption, signature, etc., were prepared on OPA Form D-38, the one with reference to the first floor west apartment, reading as follows:

"Due notice having been given the landlord of the above-described accommodations, the Rent Director has considered the evidence in this matter and finds that the facts in this case require a reduction of the Maximum Rent on the grounds stated in Section (s) 5-C-1 of the Rent Regulation.

"Therefore on the basis of the rent which the Rent Director finds was generally prevailing in the Defense-Rental Area for comparable housing accommodations on the Maximum Rent Date, it is ordered that the Maximum Rent for the above-described accommodations be, and it hereby is, changed from $80.00 per month to $65.00 per month.

"Issued December 17th 1943 and effective beginning with the next regular rent payment period. No rent in excess of the Maximum Rent established by this order may be received or demanded. This order will remain in effect until changed by the Office of Price Administration."

Similar orders were made by Diggle on or about February 21, 1945, effective March 7, 1945, and, in addition thereto, he made orders on OPA Form D-11, the one with reference to the first floor west apartment,

"In the event you wish to file a statement and supporting evidence with regard to the action proposed above, your statement and supporting evidence should be filed within 5 days from the date of this notice. Your statement and evidence submitted should be typed or legibly written and the docket number appearing on this notice should be placed on each document filed. If no statement or evidence is filed within the above period, the Rent Director may take the action proposed without further notice."

Similar orders, effective March 7, 1945, were made by Diggle with reference to the other apartments.

It has been stipulated by the parties that if the orders made by B. W. Diggle were valid, the defendant made overcharges substantially in the amount claimed in the complaint. If defendant had the right to charge and collect the amounts fixed by Dodge then there are no overcharges.

The essence of plaintiff's contention is stated by him upon brief in the following language: "By virtue of Section 204(d) of the Emergency Price Control Act [50 U.S. C.A.Appendix, § 924(d)] this court has no jurisdiction to consider the validity of order. [i. e. of Diggle's order effective March 7, 1945.] Any question as to the validity of said order on any constitutional or statutory ground is withdrawn from the jurisdiction of this Court and committed to the

exclusive jurisdiction of the Emergency Court of Appeals by Section 204(d) of the Act. Constitutionality of such a withdrawal of jurisdiction was upheld by the Supreme Court in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S. Ct. 641, 88 L.Ed. 892. It is important here to note that the considerations which moved the Court in the Yakus case apply just as fully to orders reducing rent as to those promulgated in broad general regulations."

■ The applicable regulation is 1388.-1181 (8 F.R. 14663), issued under 56 Stat. 23, 765, Public Law 383, 78th Congress, 50 U.S.C.A.Appendix, § 901 et seq. Inasmuch as the apartments had not been constructed prior to the "maximum rent date" (April 1, 1941) or prior to the "effective date of regulation" (July 1, 1942), the landlord filed the registration statement, required by Section 7, within 30 days after the property was first rented. The administrator therefore had the right, as provided in Section 3(e), to "order a decrease in the maximum rent as provided in Section 5(c)." The particular portion of Section 5(c) under which it must be assumed Dodge acted is subsection (1), which authorizes "a decrease of the maximum rent otherwise allowable" on the ground that the rent was "higher than the rent generally prevailing in the defense-rental area for comparable housing accommodations *on the maximum rent date.*" [Italics supplied.] Thus it must be presumed that when Dodge made his orders of December 17, 1943, reducing the rents from the amounts shown in column 2 of the schedule to the amounts shown in column 3 he first made a finding as to the rent generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date and adjusted the rent of each apartment to an amount coinciding with the rent of such facilities in that area on the maximum rent date. Neither party is assailing Dodge's determination and, without pausing to discuss the matter at length, this court is of the opinion that it is lacking in power or jurisdiction to modify that order or to pass upon its validity. Cf. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88

L.Ed. 892; Bowles v. Lake Lucerne Plaza, 5 Cir., 148 F.2d 967; Bowles v. Myers, 4 Cir., 149 F.2d 440; Porter v. McRae, 10 Cir., 155 F.2d 213, and Bowles v. Penn–Harris Hotel Co., D.C., 58 F.Supp. 432.

■ Is the adjustment made more than a year later by Diggle in a different category? Plaintiff asserts that this court has no jurisdiction to try this question; yet it seems to be the precise issue submitted for determination. Reference has been made to the stipulation of the parties that if the defendant had the right to charge and collect the amounts fixed by Dodge then there are no overcharges. Upon brief plaintiff says: "The question to be decided * * * is whether or not the order issued by B. W. Diggle on March 7, 1945 was a valid order." Inasmuch as plaintiff's cause of action rests solely upon that order, this court is of the opinion that plaintiff must prove that it was a valid order. Has he done so? The sole evidence upon this issue is contained in the stipulation of the parties, in the written documents set out above, and in the applicable regulations and statutes. It is therefore appropriate to examine the statutes and regulations.

■ Under section 902(b), Title 50 U.S. C.A.Appendix, the administrator is given authority "by regulation or order [to] establish such maximum rent or maximum rents for * * * [housing] accommodations as in his judgment will be generally fair and equitable * * *." Adjustments may be made "for such relevant factors as he may determine and deem to be of general applicability in respect of such accommodations, including increases or decreases in property taxes and other costs within such defense-rental area." Subsection (c), id., provides, inter alia, that under regulations to be prescribed by the administrator, "he shall provide for the making of individual adjustments in those classes of cases where the rent on the maximum rent date * * * is, due to peculiar circumstances, substantially higher or lower than the rents generally prevailing in the defense-rental area for comparable housing accommodations, and in those classes of cases where substantial hardship has resulted since the maximum rent date from a substantial and unavoid-

able increase in property taxes or operating costs." Cf. Village Apartment Homes v. Bowles, Em.App., 149 F.2d 649; Asbar Realty Co. v. Bowles, Em.App., 149 F.2d 654.

Section 5(c) of the regulation cited supra states that a decrease of the maximum rent otherwise allowable may be made by the administrator *only* on the nine (9) grounds therein specified. There is no contention that "substantial deterioration" had occurred, making (2) applicable, that there had been a decrease in services, furniture, furnishings or equipment making (3) applicable, that there was any special relationship between the landlord and tenant or peculiar circumstances making (4) applicable, or that (5) with reference to varying rents, (6) with reference to seasonable rent, (7) with reference to substantial decrease in occupancy or (9) with reference to modification are applicable; so by the process of elimination Diggle's action must have been taken under subsections (1) or (8) or both of them. They read as follows:

[Decrease may be ordered only on the ground that]

(1) The maximum rent for housing accommodations \* \* \* is higher than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations *on the maximum rent date* [italics supplied] or

(8) The maximum rent is established under section 4(i) and is higher than the rent generally prevailing in the defense-rental area for comparable housing accommodations on the maximum rent date taking into consideration any increased occupancy of such accommodations since that date by subtenants or other persons occupying under a rental agreement with the tenant: Provided, That no decrease shall be ordered below the rent on the maximum rent date.

Subparagraph (8) quoted above has been set out in an abundance of caution and in a desire to present fully all provisions which may have any application. The court understands, however, that it is not relied upon by plaintiff; but if it is, no showing has been made as to any increased occupancy by subtenants or other persons. The sole sub-section of the regulation, therefore, which seems to be pertinent, is subsection (1).

As has been pointed out, subsection (1) of section 5(c) required a finding to be made by the area rent director that the rent fixed by the landlord was higher than the rent generally prevailing in the Defense-Rental Area. This pre-supposed that he would determine and did determine what the rent generally prevailing was. There is no showing in the present record that he acted arbitrarily, fraudulently, capriciously or upon aught than proper and competent evidence. Indeed the evidence indicates quite the contrary. It shows he made a detailed study of all proper factors upon which he based his conclusion. If he had attempted to rescind his findings and conclusions more than a year later it is reasonable to assume that he would have been impelled, if not compelled, to make a showing that he had been imposed upon by some one having some interest in the matter. Otherwise it would seem that his subsequent action was arbitrary and capricious. Nor does the fact that a change had occurred in the personnel of the officer make any appreciable difference. He, likewise, should give due faith and credit to his predecessor's acts, setting them aside, after rights had attached, only after determining that they were clearly erroneous or that they had been arbitrarily, fraudulently or capriciously entered. This conclusion is implicit in the regulation promulgated by the administrator. Surely he would not willingly and knowingly overturn or nullify his own regulation.

The problem before the court is a baffling one and the right answer is somewhat elusive. Decided cases seem to indicate that this court may be lacking in jurisdiction to pass upon the validity of the Diggle order. But if that be so what disposition should be made of this case? Plaintiff seeks to recover damages, alleging, in substance, that the maximum rents for the several apartments were established March 7, 1945. Defendant alleges in his answer that the maximum rents were established December 17, 1943. The issue thus drawn must be resolved. Plaintiff had the burden of proof. It is the conviction of this court that he has not sustained it. Judgment will therefore be entered for the defendant.