**GOLD-FORM, Inc. v. BOWLES, Price Adm'r.**

**No. 240.**

United States Emergency Court of Appeals.
Heard at New York Oct. 1, 1945.
Decided Dec. 5, 1945.

Morris H. Cohn, of Newark, N. J., for complainant.

Jacob D. Hyman, Asst. Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Lester N. Salwin and Samuel M. Singer, Attorneys, all of the O.P.A., all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

Gold-Form, Inc., claims to be aggrieved by an order of the Price Administrator denying its protest against a part of Order No. 28 issued under Revised Maximum Price Regulation 208 (Maximum Prices for Staple Work Clothing) (9 F.R. 9978). The order was objected to in so far as it established a maximum price of $10.175 per dozen for complainant's Lot No. 201 boys' dungarees made of 8.5 olive drab herringbone twill.

Section 2 of the regulation sets forth four so-called pricing rules containing automatic formulæ to be applied by established manufacturers for determining the maximum prices of their work clothing garments. Rule 1 (§ 2.2) provides that a manufacturer's maximum price for a particular garment is the price at which the same garment was offered to a purchaser of the same class on the manufacturer's last issued price list which was generally circu-

lated among the manufacturer's customers or representatives during or before March, 1942, and pursuant to which the manufacturer delivered one or more garments of the same classification during or before March, 1942, plus or minus certain amounts specified in Appendix B. Rule 2 (§ 2.3) establishes a formula for determining the maximum price of a garment where the garment is the same as one which the seller manufactured during the 12 months preceding April 1, 1942, but cannot be priced under Rule 1. Rule 3 (§ 2.4) provides a method of in-line pricing for a garment which cannot be priced under Rules 1 and 2 and which is the same as one priced under Rule 1 except for replacements or curtailments in body materials. Rule 4 (§ 2.5) provides a method of establishing maximum prices for garments with unusual dimensions or of substandard quality.

If the maximum price of a garment cannot be determined by any one of the foregoing automatic pricing rules, a procedure is set forth in Rule 5 (§ 2.6) for obtaining a maximum price by application to the Administrator. Rule 5 reads in part as follows: "The maximum price of a garment of staple work clothing which cannot be priced under Rules 1, 2, 3, and 4 shall be a price, in line with the level of prices established by this regulation, determined by the Office of Price Administration upon application by the seller. * * *"

Pursuant to § 2.6, the complainant filed with the Price Administrator an application requesting the setting of maximum prices for two classes of work clothing garments, for sale exclusively to jobbers.[1] The first was described as "Lot #101—Bib Overall, Double Bib, Reinforced Belt, Double Stitched Seams, Two (2) Front Pockets, Shoulder Straps and Rings, Sizes 4 to 12", for which the applicant requested a maximum price of $12 per dozen, net. The second was described as "Lot #201 Dungaree, Two (2) Front Pockets, One (1) Back Pocket, Reinforced Belt, Double Needle Stitching, Sizes 8 to 16", for which applicant requested a maximum price of $12.50 per dozen net. With respect to bib overalls, the application listed as competi-

tors Continental Neckwear Company of New York City and Eden Mfg. Co., Brooklyn, N. Y., each of which was stated to have a price to jobbers of $12 per dozen for bib overalls. With respect to the dungarees, the application listed as competitors Continental Neckwear Co., New York City, and Franklin Mfg. Co., New York City, the former stated to have a price to jobbers for dungarees of $12.50 per dozen net, and the latter $12.75 per dozen net. The materials for both the bib overall and the dungaree were described in the application as 36" olive drab, 8 oz.[2] Herringbone, Rejects. The application also set forth an analysis of the cost of each garment in question and statements of income and profit and loss for the calendar years 1939–1943.

In response to complainant's foregoing application, the Administrator on November 27, 1944, issued Order No. 28, the order now under review. The maximum price for the bib overall was set at $12 per dozen net, which was the price requested in the application. However, the dungaree price was set at $10.175, which was considerably below the requested price of $12.50, and also lower than complainant's stated cost of production for this article, namely, $10.935 per dozen. The order stated that, "The maximum prices established herein are in line with the maximum prices for similar garments sold by competitive sellers of the same class."

On December 16, 1944, Gold-Form, Inc., filed with the Administrator a protest against that portion of Order No. 28 "which fixes the maximum price on lot #201, aforesaid, at $10.175". It was objected that the Administrator had failed to consider and give proper weight to the data supporting the application; that the established maximum price was below complainant's cost of production and was "unfair and unreasonable"; further, that such maximum price was "in discord with the established price charged in competitive trade for similar items."

The Administrator issued an order on January 27, 1945, incorporating into the record an affidavit by Horace L. Allen, Head of the Men's Clothing Section of the

---

[1] Since complainant had not manufactured work clothing during 1942, it could not automatically price the garments under Rule 1, 2, 3, or 4.

[2] There is a slight discrepancy here. The Administrator throughout has treated complainant's goods as consisting of 8½ oz.

herringbone. Counsel for the Administrator informed us that apparently an 8 oz. herringbone did not exist. If the Administrator was mistaken as to this, the point is unimportant for complainant obviously has not been prejudiced by being credited with a slightly heavier garment.

Office of Price Administration, Washington, D. C., explaining in detail the basis upon which the maximum price of $10.175 for complainant's dungarees was arrived at. The order offered complainant an opportunity to submit, in affidavit form, evidence in rebuttal of the Allen affidavit and any other relevant evidence which complainant might desire to offer in support of its protest. In response thereto, three affidavits were subsequently submitted by the complainant. On March 26, 1945, the Administrator issued an order incorporating certain additional material into the record.

Oral argument on the protest was heard by a Board of Review on May 7, 1945. The Board filed its report recommending that the protest be denied. On June 14, 1945, the Administrator issued his order denying the protest. Thereafter, complaint in this court was duly filed.

In defining the scope of the issue now before us, it is to be observed that complainant protested, not against the regulation itself or any of its provisions, but only against a portion of Order No. 28 issued pursuant to § 2.6 of the regulation. Therefore, for purposes of this case, it must be assumed that the pricing rules set forth in the regulation are generally fair and equitable and in all respects valid, including particularly Rule 5 (§ 2.6) which sets forth the procedure for establishing, by special order of the Administrator, maximum prices for staple work clothing which cannot be priced under any of the automatic pricing provisions of the regulation. We must decline to set aside Order No. 28 unless we can say, on the record of the protest proceedings, that the maximum price the Administrator fixed for complainant's dungaree was not as a matter of law in accordance with the standard embodied in Rule 5 (§ 2.6).

Under the terms of Rule 5, the Administrator was required to put a maximum price upon complainant's dungarees which would be "in line with the level of prices established by this regulation". This pricing formula embodied in Rule 5 was deemed by the Administrator to be "neces-

sary and proper in view of the wide variety of staple work clothing sold in the market." The price fixed under Rule 5 for a particular garment must be reasonably related to the prices of similar garments already priced under other provisions of the regulation. It is the general purpose of the regulation to maintain the base period level of prices and the price relationships which existed in the base period for the variously comprised staple work items, with appropriate adjustments for the differences in cost of materials. The scheme of Rule 5 is obviously inconsistent with a pricing on an individual cost-plus basis. If complainant as a new manufacturer were given a price on such a basis, it would not only be inflationary in effect, but would discriminate against established manufacturers whose prices are determined by the freeze provisions of the regulation. We agree with the Administrator that "a correctly determined in-line price is no more required to guarantee the individual seller a profit than a price established under the general provisions of a valid regulation."

Therefore, the complainant takes nothing by what is perhaps its main point, that the maximum price of $10.175 is somewhat less than what it would cost complainant to produce the garment in question. As a matter of fact, according to the figures submitted by complainant, it could make a profit at the established price if it were able to purchase its piece goods directly from the mills at the mill ceiling price instead of from jobbers at a price 12½ per cent higher. It appears that manufacturers in this field have historically purchased their materials directly from the mills. Hence, in the case of an established manufacturer, the maximum price for dungarees made of herringbone twill—a "replacement" for denim—would automatically be determined under Rule 3 on the basis of a comparison between the mill prices for denim and herringbone twill.[3] It may be that complainant, as a new manufacturer, has been at a disadvantage in competing for the available short supply of piece goods.[4] But the regulation does not contemplate a departure from an otherwise correctly deter-

---

[3] Under § 2.4(b) (2), the cost of any body material means "the maximum net price which the seller could lawfully be charged for such material if purchased on his customary terms from the source of supply most used by him in purchasing materials of the same type during the six months ending March 31, 1942".

[4] The affidavit by complainant's secretary states that "the mills refuse to sell

110

mined in-line price because of any such individual consideration as this.

We return, then, to Mr. Allen's affidavit which sets forth the calculations upon which the price for complainant's dungarees was determined. It appears that, prior to acting on complainant's application, the Administrator had processed an application under § 2.6 filed by one Louis Barbanel asking for the fixing of a maximum price on a boy's dungaree of the same description as complainant's garment as to material make-up, yardage, workmanship and trimmings. Since complainant and Barbanel were stated to be sellers of the same class, both selling staple work clothing in the wholesale trade in the same trading area, it was appropriate to fix the same ceiling price for complainant's garment as had been determined for Barbanel—namely, $10.175 per dozen. Accordingly, Mr. Allen's affidavit sets forth the detailed calculations used in pricing Barbanel's garment. The Administrator had no record of any established manufacturer having a base period price for dungarees made of 8.5 olive drab herringbone twill. However, the affidavit recites the reports on file from four manufacturers—Blue Buckle Overall Co., Lynchburg, Va., Blue Ridge Overall Co., Baltimore, Md., Buckeye Overall Co., Versailles, Ohio, and Blue Bell Overall Co., New York City— indicating that they had an established maximum price under Rule

1 of $8.875 per dozen for an 8 oz. sanforized denim dungaree. Under the regulation, their maximum price for a similar garment made of the substitute material, 8.5 olive drab herringbone twill, would have been determined by application of the formula set forth in Rule 3: to the price of $8.875 would have been added or subtracted the difference between the cost of the replacement material and the cost of the old material, plus a percentage of that difference—5 per cent in the case of sales to wholesalers. The result would have been, for these four manufacturers, a maximum price of $10.175 under Rule 3 for the same garment described in the applications by Barbanel and complainant. The detailed calculations, as contained in Mr. Allen's affidavit, are set forth in the footnote.[5]

It thus appears that complainant's maximum price has been correctly determined in accordance with the pattern of in-line pricing contained in the regulation. Mr. Allen's affidavit affirms that the four other manufacturers mentioned are established and leading manufacturers selling to the wholesale trade in the same trading area as that of complainant and Barbanel, and that in a normal market complainant and Barbanel "would have to meet their selling prices in order to remain in business." Complainant has not maintained the burden of establishing that these statements are incorrect. In a rebuttal affidavit filed by the

the material to us, despite a directive of the War Production Board"; that "we placed an order with M. Lowenstein & Sons, Inc., a mill, but when the order came through, we received it from Eddington Fabrics, Inc., reputedly a subsidiary, billed at the jobbers' price, as aforesaid."

| 5 | "Four manufacturers' dungaree | Barbanel's dungaree |
| --- | --- | --- |
| Materials used | 8 oz. sanforized denim | 8.5 olive drab herringbone twill |
| Yardage used per dozen | 25 (average) | 18. |
| Mill ceiling for body material per yd | $0.2275 | $0.3850 1 |
| Body material cost per dozen | $5.69 | $6.93 |

1 Barbanel actually reported a material cost price of 44¢. However, since its material was purchased from jobbers, there was deducted the 12½% commission charged by the jobber (and allowed to such jobbers by Maximum Price Regulation No. 127 governing sales of the fabric) to arrive at the mill ceiling of 38½¢. The jobber commission was deducted because established manufacturers historically purchase their materials directly from the mills. Therefore, in determining their own ceiling prices under Rule 3, such manufacturers would have calculated body material cost on the basis of 38½¢.

"The difference in body material cost in producing a dozen 5-ounce sanforized denim and a dozen 8.5 olive drab herringbone twill dungarees is $1.24 ($6.93 minus $5.69). Using the Rule 3 formula, this difference is multiplied by 105%. Adding the result thus arrived at ($1.30) to $8.87½ equals $10.17½, the ceiling price which the leading manufacturers would have established under Rule 3, and which also was approved for Louis Barbanel."

secretary of complainant, it is merely recited in this connection that, "I am informed that none of these companies sell their product except to retailers and at prices in line with the price requested by the protestant and not with the price fixed by the O.P.A."

Complainant objects that it was unreasonable for the Administrator to determine its maximum price by reference to the price which had been determined for Barbanel; that the two are not sellers of the same class, Barbanel being, not a manufacturer, but a jobber with no manufacturing facilities whatsoever. An affidavit by Barbanel to this effect was submitted in evidence. Complainant suggests that, in making an application for a price of $15 per dozen for dungarees, Barbanel merely took a "flyer", the inference being that if the price were allowed to him he would chance entering upon the manufacture of the item; if not, he had nothing to lose. This may all be true, but it is quite immaterial. Barbanel in his application to the Administrator described himself as a "manufacturer of boy's pants". In processing Barbanel's application, the Administrator made his calculations upon the assumption that Barbanel was a manufacturer selling in the wholesale trade the same garment as described in complainant's application. If the Administrator had never heard of Barbanel, he would have made the calculations on complainant's application in exactly the same way that he computed the price for Barbanel, and the result would have been the same.

In its application for a price of $12.50, complainant named as its competitors Continental Neckwear Co. and Franklin Mfg. Co., stating that the former had a price to jobbers of $12.50 per dozen net and the latter a price of $12.75. No further details were furnished as to the garments being sold by these competitors. Mr. Allen's affidavit stated that, according to the records of the Office of Price Administration, "neither of these companies reported its maximum prices pursuant to the requirements of the Regulation. Therefore, it is not possible for the Office of Price Administration to determine whether the alleged prices of these competitors are correctly determined maximum prices." In his order of January 27, 1945, the Administrator invited complainant to furnish information showing the pricing method which each of the two competitors used to establish its maximum prices for boys' dungarees. Also, complainant was asked to describe in detail the features and workmanship of such competitive dungarees and, if possible, to submit representative samples. The only response which complainant made to this was a statement in an affidavit by complainant's secretary that the dungarees being sold by these two competitors at the prices stated were identical as to features, workmanship and other details with complainant's garment, and that "if neither of these companies reported its maximum prices to the O.P.A., it is no fault of the protestant." In the absence of a showing that the prices which these competitors were alleged to be charging for a similar garment were established in accordance with the pricing rules contained in the regulation, there is no basis for complainant's contention that the price for its garment should be fixed in line with the level of the prices of these competitors.

■■ It is argued that, since the Administrator in Order No. 28 allowed complainant the exact price of $12 per dozen which it requested for its bib overall garment, it was arbitrary and capricious for the Administrator to disallow complainant's requested price on the dungaree garment, in view of the fact that complainant used exactly the same formula to arrive at its cost for each item. This objection was not presented in the protest and it is therefore unavailable here. Bowman v. Bowles, Em. App., 1944, 140 F.2d 974. Moreover, as pointed out in the Administrator's brief, a bib overall is a different class of staple work clothing from a dungaree and historically has sold at a higher price level "due to the additional features, such as bibs, backs, straps, etc., customarily found in these garments, necessitating additional labor operations and the outlay of additional labor costs." Whether the maximum price determined for complainant's bib overalls was correctly computed in accordance with the pricing rules does not appear in the record. This question is not before us, but even if it be assumed that the computation was incorrect with respect to the price for bib overalls, this would in no way invalidate a correctly determined in-line price for the dungaree.

■ Finally, complainant urges that it has been subjected to discriminatory treatment because the Administrator granted to

**112**

the United Pants Mfg. Co. of Philadelphia, a competitor, a price of $15 per dozen upon the identical garment, whereas complainant was only allowed $10.175. It appears that by Order No. 27 under RMPR 208 issued November 8, 1944, the Administrator had determined a maximum price of $15 on a garment described in the application by United Pants Mfg. Co. as a "boys' work pant containing 21½ yards per dozen of 1.55 sanforized O. D. Herringbone Twill, made with two hip pockets and two side pockets." After the Administrator's attention had been called to this price by the affidavit of complainant's secretary submitted in support of its protest, the Administrator issued an amendment to said Order No. 27 reducing the maximum price from $15 to $12.55 net. The amended order recited that upon reexamination of the application by United Pants Mfg. Co., it was disclosed that the garment described was "a boys' dungaree rather than a work pant"; and that the selling price of $15 was incorrect because it was established on the basis of the maximum prices for boys' work pants sold by competitive sellers of the same class. Complainant describes this action by the Administrator as being "strange and weird" and as being merely a maneuver "to give his action in the case of the complainant some semblance of reason and fair play." We see nothing sinister in the fact that the Administrator corrected an error previously made in disposing of an application for individual pricing when the error was called to his attention. At the oral argument, counsel for complainant insisted that there is no difference between a "work pant" and a "dungaree"; that the terms are used interchangeably in the trade. Section 1 of the regulation, however, classifies "work pants" and "waistband overalls or dungarees" as separate types of garment. Just what the technical distinction between them is does not appear. In explanation of the Administrator's action in finally setting a price of $12.55 per doz. net for the dungaree manufactured by United Pants Mfg. Co., whereas complainant was allowed only $10.175, counsel for the Administrator pointed out that the dungaree manufactured by United Pants Mfg. Co. contained 3½ yards more material per dozen and was made of somewhat heavier herringbone twill.[6] These differences would be reflected in the computation of the maximum prices for the respective garments under the formulæ contained in the pricing rules. We have no means of telling from the record whether $12.55 was the correctly computed in-line price for the garment made by United Pants Mfg. Co. However that may be, it is clear that complainant has not established a case of discrimination by showing that the maximum price fixed for its garment was less than the maximum price of the United Pants Mfg. Co. garment.

A judgment will be entered dismissing the complaint.

---

[6] Examination of the samples submitted by complainant discloses that United's dungarees has 2 hip pockets to complainant's 1, 4 fly buttons and buttonholes to complainant's 3, and 6 belt loops to complainant's 5.